[No. S158965. Aug. 5, 2010.]

BRIAN REID, Plaintiff and Appellant, v.
GOOGLE, INC., Defendant and Respondent.

**COUNSEL**

Duane Morris, Barry L. Bunshoft, Ray L. Wong, Paul J. Killion, Lorraine P. Ocheltree, Eden E. Anderson and Allegra A. Jones for Plaintiff and Appellant.

Charlotte E. Fishman for California Employment Lawyers Association as Amicus Curiae on behalf of Plaintiff and Appellant.

Thomas W. Osborne, Melvin Radowitz and Barbara A. Jones for AARP as Amicus Curiae on behalf of Plaintiff and Appellant.

Wilson Sonsini Goodrich & Rosati, Fred W. Alvarez, Marina C. Tsatalis, Amy K. Todd, Marvin Dunson III, Koray J. Bulut, Elizabeth C. Tippett, Jeanna Steele, Gary M. Gansle; Paul, Hastings, Janofsky & Walker and Paul W. Cane, Jr., for Defendant and Respondent.

Greines, Martin, Stein & Richland and Robert A. Olson for Association of Southern California Defense Counsel as Amicus Curiae on behalf of Defendant and Respondent.

Orrick, Herrington & Sutcliffe, Gary R. Siniscalco, Patricia K. Gillette, Greg J. Richardson and Lynne C. Hermle for Employers Group and California Employment Law Council as Amici Curiae on behalf of Defendant and Respondent.

Jonathan B. Steiner, Jay-Allen Eisen, Jon B. Eisenberg, Dennis A. Fischer, Steven L. Mayer, Robert A. Olson, Douglas R. Young; Greines, Martin, Stein & Richland and Robin Meadow for California Academy of Appellate Lawyers as Amicus Curiae.

**OPINION**

**CHIN, J.**—Plaintiff Brian Reid filed an age discrimination lawsuit against his former employer, Google, Inc. The trial court granted Google's summary judgment motion relating to plaintiff's claims. The Court of Appeal reversed.

█ In this case, we decide two issues. First, does a trial court's failure to rule on a party's evidentiary objections relating to a summary judgment motion waive the objections on appeal? Second, should California courts follow the federal courts in adopting the "stray remarks doctrine" in employment discrimination cases? Under this doctrine, statements that nondecision makers make or that decision makers make outside of the decisional process are deemed "stray," and they are irrelevant and insufficient to avoid summary judgment.

In this case, the Court of Appeal found that the trial court's failure to rule expressly on evidentiary objections did not waive those objections on appeal. Specifically, it ruled that Google's filing of written evidentiary objections before the summary judgment hearing was sufficient to preserve those

objections on appeal. Accordingly, it reviewed Google's evidentiary objections on the merits. The Court of Appeal further refused to apply the stray remarks doctrine to exclude alleged discriminatory statements that Reid's supervisors and coworkers made. In reversing the trial court's grant of Google's summary judgment motion, the Court of Appeal considered those alleged statements and other evidence Reid presented in opposition to the motion.

We agree with the Court of Appeal's conclusions. Regarding the waiver issue, the Court of Appeal correctly determined that a finding of waiver does not depend on whether a trial court rules expressly on evidentiary objections and that Google's filing of written evidentiary objections before the summary judgment hearing preserved them on appeal. (Code Civ. Proc., § 437c, subds. (b)(5), (d).)[1] After a party objects to evidence, the trial court must then rule on those objections. If the trial court fails to rule after a party has properly objected, the evidentiary objections are not deemed waived on appeal. Regarding the stray remarks issue, the Court of Appeal also correctly determined that application of the stray remarks doctrine is unnecessary and its categorical exclusion of evidence might lead to unfair results.

## I.  FACTUAL AND PROCEDURAL HISTORY

Reid worked at Google between June 2002 and February 2004. Google's vice-president of engineering, Wayne Rosing (then age 55), hired Reid (then age 52) as director of operations and director of engineering. Reid has a Ph.D. in computer science and is a former associate professor of electrical engineering at Stanford University.

In addition to Rosing, Reid also interacted with other high-level employees, including chief executive officer (CEO) Eric Schmidt (then age 47), vice-president of engineering operations Urs Hölzle (then age 38), and founders Sergey Brin (then age 28), and Larry Page (then age 29). Reid reported to Rosing and at times to Hölzle.

In a review of Reid's first year's job performance (his only written performance review while employed at Google), Rosing described Reid as having "an extraordinarily broad range of knowledge concerning Operations, Engineering in general and an aptitude and orientation towards operational and IT issues." Rosing noted that Reid "project[ed] confidence when dealing with fast changing situations," "ha[d] an excellent attitude about what 'OPS' and 'Support' mean," and was "very intelligent," "creative," "a terrific

---

[1] Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

problem solver," and that the "vast majority of Ops [ran] great." Rosing gave Reid a performance rating indicating he "consistently [met] expectations."

In Reid's performance review, Rosing commented: "Adapting to Google culture is the primary task for the first year here . . . . [¶] . . . [¶] Right or wrong, Google is simply different: Younger contributors, inexperienced first line managers, and the super fast pace are just a few examples of the environment." Reid received bonuses from February 2003 to February 2004, including stock options for 12,750 shares.

Reid alleged that Hölzle and other employees made derogatory age-related remarks to Reid while he was employed at Google. According to Reid, Hölzle told Reid that his opinions and ideas were "obsolete" and "too old to matter," that he was "slow," "fuzzy," "sluggish," and "lethargic," and that he did not "display a sense of urgency" and "lack[ed] energy." Hölzle allegedly made age-related comments to Reid "every few weeks." Other coworkers called Reid an "old man," an "old guy," and an "old fuddy-duddy," told him his knowledge was ancient, and joked that Reid's CD (compact disc) jewel case office placard should be an "LP" instead of a "CD."

In September 2003, cofounder Brin sent an e-mail to several executives commenting about Google's payroll: "We should avoid the tendency towards bloat here particularly with highly paid individuals." Rosing responded, "Excellent memo and very timely . . . . Let me disclose what I am up to organizationally . . . . We are looking for a senior Director (note I did not capitalize Sr.) or VP level person to run this operation. . . ."

In October 2003, Rosing removed Reid from the director of operations position, and relieved him of his responsibilities as director of engineering, though he was allowed to retain the title. Hölzle, 15 years younger than Reid, assumed Reid's position as director of operations, and Douglas Merrill, 20 years younger than Reid, took over his other duties. Google asked Reid to develop and implement an in-house graduate degree program (Graduate Degree Program) and an undergraduate college recruitment program (Google Scholar Program). The Graduate Degree Program was aimed at retaining engineers by allowing them to attend courses that Carnegie Mellon University professors taught at Google and to obtain master's degrees in engineering. According to Reid, Google's CEO, Schmidt, assured Reid that the graduate program was important and would last at least five years. But Reid was given no budget or staff to support it.

In January 2004, Brin, Page, Rosing, and Hölzle collectively decided not to pay Reid a bonus for 2003. CEO Schmidt sent an e-mail to Rosing asking for "a proposal from [him] . . . on getting [Reid] out . . . ." On February 7, 2004,

Rosing responded to Schmidt, expressing concern about the decision not to pay Reid a bonus. He stated that he was "having second thoughts about the full zero out of the $14K bonus [versus] treating it consistent with all similarly situated performers." Rosing suggested that Reid should receive a bonus of $11,300, in addition to a severance package, to avoid "a judge concluding we acted harshly."

On February 13, 2004, Rosing told Reid the engineering department no longer had a place for him. Google asserts Rosing told Reid that the Graduate Degree Program was being eliminated and that it terminated Reid because of job elimination and poor performance. On the other hand, Reid maintains he was given no reason for his termination other than lack of "cultural fit," and he was told the graduate program would continue and his termination was not performance based.

After Reid asked if he could look for a job elsewhere in the company, Rosing encouraged him to apply for positions with other departments. However, e-mails circulating among various department heads indicated that no other department intended to hire Reid. Vice-president of business operations Shona Brown wrote to Rosing and human resources director Stacy Sullivan, asserting, "you should make sure I am appropriately prepped. My line at the moment is that there is no role for him in the HR organization." Sullivan responded: "Seems [Reid's] first interest is to continue his work on the college programs he's been working on . . . . He'll explore that option first with both of you . . . . I propose [Brown] . . . meets with [Reid] [on February 24] and lets him know there's no role [for him] in her org . . . . I've talked with [chief financial officer George] Reyes live, he will not have an option for [Reid] . . . . [T]his is The Company Decision." Sullivan concluded: "We'll all agree on the job elimination angle . . . ."

On February 24, 2004, Reid met with chief financial officer Reyes, who told him no positions were open in Reyes's department. Reid then met with Brown, who stated no positions were available for him in her department. According to Reid, Brown commented that he was not a "cultural fit" at Google. On February 27, Reid left Google with a two-month severance package.

On July 20, 2004, Reid sued Google. The complaint alleged 12 causes of action, including claims for age discrimination under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) and California's unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.); wrongful termination in violation of public policy; failure to prevent discrimination; and both negligent and intentional infliction of emotional

distress. Reid sought injunctive relief, disgorgement of profits, restitution of lost stock options, and attorney fees and costs.

Google demurred and brought motions to strike as to various causes of action, which were granted in part. Google then filed a motion for summary judgment as to Reid's remaining causes of action (those specified above), based on claims of age discrimination by Google. Although Google filed written objections to evidence Reid submitted, the trial court did not rule specifically on those objections. Instead, it stated it was relying only "on competent and admissible evidence."

The trial court granted the summary judgment motion. It found that Google's evidence, while "not sufficient to prove that Plaintiff cannot establish a prima facie case of age discrimination," "is sufficient to prove that [Google] had legitimate nondiscriminatory reasons for . . . terminating [plaintiff's] employment in February 2004."[2] The court further found that Reid's evidence was "not sufficient to raise a permissible inference that in fact, [Google] considered Plaintiff's age as a motivating factor in . . . terminating his employment." The trial court noted that, because Reid had failed to raise a triable issue of material fact as to whether Google's reasons were pretextual, his age discrimination claims should be dismissed. (§ 437c, subd. (c) ["motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"].)

As relevant here, the Court of Appeal, in a published opinion, reversed the trial court's granting of Google's summary judgment motion relating to Reid's causes of action for age discrimination under FEHA and the UCL,

---

[2] In California, courts employ at trial the three-stage test that was established in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802 [36 L.Ed.2d 668, 93 S.Ct. 1817], to resolve discrimination claims, including age discrimination. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 354 [100 Cal.Rptr.2d 352, 8 P.3d 1089] (*Guz*).) At trial, the employee must first establish a prima facie case of discrimination, showing " ' "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on a [prohibited] discriminatory criterion . . . .' " ' " (*Id.* at p. 355.) Once the employee satisfies this burden, there is a presumption of discrimination, and the burden then shifts to the employer to show that its action was motivated by legitimate, nondiscriminatory reasons. (*Id.* at pp. 355–356.) A reason is " 'legitimate' " if it is *"facially unrelated to prohibited bias,* and which if true, would thus preclude a finding *of discrimination."* (*Id.* at p. 358.) If the employer meets this burden, the employee then must show that the employer's reasons are pretexts for discrimination, or produce other evidence of intentional discrimination. (*Id.* at p. 356.)

Here, at the summary judgment stage, the trial court did not impose an initial prima facie burden on Reid, but proceeded directly to the second step of the *McDonnell Douglas* formula and determined that Google had made an initial no-merit showing. (See *Guz, supra,* 24 Cal.4th at pp. 356–357.)

wrongful termination, failure to prevent discrimination, and both negligent and intentional infliction of emotional distress. The Court of Appeal found that undisputed evidence supported both a prima facie case of age discrimination and a legitimate, nondiscriminatory reason for Reid's termination, i.e., the elimination of the Graduate Degree Program.

However, on the issue of whether the stated reason for termination was pretextual, the Court of Appeal held that evidence Reid had presented raised a triable issue of material fact. Reid offered statistical evidence of discrimination at Google, discriminatory comments that coworkers and decision makers made, and evidence that Google demoted Reid to a nonviable position before terminating him and advanced changing rationales for his termination. Although Google filed written objections to Reid's evidence and raised its objections at the hearing, the trial court did not expressly rule on them. The Court of Appeal held that the trial court's failure to rule on the objections did not waive them on appeal. The Court of Appeal considered and rejected Google's challenges to the methodology Reid's statistical expert used and Google's argument that alleged ageist comments by Google decision makers and Reid's coworkers were stray remarks and therefore insufficient proof of pretext. The court explained that judgments regarding such discriminatory comments "must be made on a case-by-case basis in light of the entire record." The court concluded that, because Reid's evidence and inferences of discrimination raised a triable issue of fact as to the existence of pretext, the trial court erred in granting the summary judgment motion.

We granted Google's petition for review to determine (1) whether evidentiary objections on which the trial court has not expressly ruled when it decided a summary judgment motion are preserved on appeal, and (2) whether California law should adopt the stray remarks doctrine.

## II. DISCUSSION

### A. *Evidentiary Objections Not Ruled on at Summary Judgment*

We first address the issue whether evidentiary objections are preserved on appeal when the trial court does not expressly rule on them when it decides a summary judgment motion. Section 437c, governing summary judgment motions, contains two waiver provisions relating to evidentiary objections.

Section 437c, subdivision (b)(5) states that: "Evidentiary objections not made at the hearing shall be deemed waived."[3]

---

[3] Waiver is the " ' "intentional relinquishment or abandonment of a known right," ' " whereas forfeiture is the " 'failure to make the timely assertion of a right.' " (*People v. Saunders*

Section 437c, subdivision (d) states that: "Supporting and opposing affidavits or declarations shall be made by any person on personal knowledge, shall set forth admissible evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavits or declarations. Any objections based on the failure to comply with the requirements of this subdivision shall be made at the hearing or shall be deemed waived."

In this case, Google submitted 31 pages of written objections to Reid's evidence. For the most part, Google raised its objections at the hearing by incorporating those written objections. In the trial court's written order granting summary judgment, it did not rule specifically on Google's evidentiary objections, but stated it was relying only on "competent and admissible evidence pursuant to *Biljac Associates v. First Interstate Bank* (1990) 218 Cal.App.3d 1410, 1419–1429 [267 Cal.Rptr. 819]."

### 1. *Background:* Biljac *and the Waiver Rule*

In *Biljac*, the plaintiffs filed voluminous evidentiary objections and asked the trial court to make written rulings on all of them. (*Biljac Associates v. First Interstate Bank* (1990) 218 Cal.App.3d 1410, 1419 [267 Cal.Rptr. 819] (*Biljac*).) The trial court declined to render formal rulings, finding that it would be " 'a horrendous, incredibly time-consuming task' " to rule individually on each piece of evidence and that such rulings "would serve very little useful purpose." (*Id.* at p. 1419, fn. 3.) The plaintiffs argued failure to rule was reversible error, but the Court of Appeal disagreed. It held that express evidentiary rulings were unnecessary because appellate review of a summary judgment determination was de novo, and "the parties remain[ed] free to press their admissibility arguments on appeal, the same as they did in the trial court." (*Id.* at p. 1419.) Thus, under *Biljac*, a trial court may decline to rule on specific evidentiary objections so long as it states it relied only on "competent and admissible evidence" in ruling on the summary judgment motion. (*Id.* at p. 1424.)

A few years later, we applied waiver principles to evidentiary objections at the summary judgment stage without mentioning *Biljac*. In *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666 [25 Cal.Rptr.2d 137, 863 P.2d 207] (*Ann M.*), the plaintiff filed a civil complaint against the owners of a shopping center after she was raped at her place of employment, located in the shopping center. We noted that "[i]n the trial court, defendants made a

(1993) 5 Cal.4th 580, 590, fn. 6 [20 Cal.Rptr.2d 638, 853 P.2d 1093], citing *United States v. Olano* (1993) 507 U.S. 725, 733 [123 L.Ed.2d 508, 113 S.Ct. 1770].) Although it is more accurate to denominate the failure to object at the summary judgment hearing a forfeiture, we will use the statutory term "waiver."

series of objections to evidence submitted by [the plaintiff] in opposition to the summary judgment motion," but "[t]he trial court did not rule on the objections." (*Id.* at p. 670, fn. 1.) We held that "[b]ecause counsel failed to obtain rulings, the objections are waived and are not preserved for appeal. (Code Civ. Proc., § 437c, subds. (b) & (c); *Golden West Baseball Co.* v. *Talley* (1991) 232 Cal.App.3d 1294, 1301, fn. 4 [284 Cal.Rptr. 53]; *Ramsey* v. *City of Lake Elsinore* (1990) 220 Cal.App.3d 1530, 1540 [270 Cal.Rptr. 198]; *Haskell* v. *Carli* (1987) 195 Cal.App.3d 124, 129–132 [240 Cal.Rptr. 439].) Although many of the objections appear meritorious, for purposes of this appeal we must view the objectionable evidence as having been admitted in evidence and therefore as part of the record." (*Ibid.*)

Again without mentioning *Biljac*, we affirmed the *Ann M.* waiver principles in *Sharon P.* v. *Arman, Ltd.* (1999) 21 Cal.4th 1181, 1186–1187, footnote 1 [91 Cal.Rptr.2d 35, 989 P.2d 121] (*Sharon P.*), disapproved on other grounds in *Aguilar* v. *Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853, footnote 19 [107 Cal.Rptr.2d 841, 24 P.3d 493]. In *Sharon P.*, the plaintiff sued the owner of the parking garage of her work building after she was attacked and sexually assaulted there. In finding waiver, we stated: "[The defendant] filed objections to the declarations of plaintiff and her counsel in the trial court, but the record contains no rulings on those objections. We therefore deem the objections waived and view plaintiff's evidence as having been admitted in evidence as part of the record for purposes of the appeal. (*Ann M., supra*, 6 Cal.4th at p. 670, fn. 1; Code Civ. Proc., § 437c, subds. (b), (c).)" (*Sharon P., supra*, 21 Cal.4th at pp. 1186–1187, fn. 1.)

Following *Ann M.* and *Sharon P.*, the same court that decided *Biljac* disapproved the *Biljac* procedure. (*Demps* v. *San Francisco Housing Authority* (2007) 149 Cal.App.4th 564, 566 [57 Cal.Rptr.3d 204] (*Demps*).) In *Demps*, the trial court granted summary judgment in favor of the defendant employer against the plaintiff's allegations of discrimination. At the summary judgment hearing, defense counsel expressly requested that the court rule on evidentiary objections previously filed by the defendant. In response, the court stated it was " 'following *Biljac* and [was] only considering the relevant and pertinent evidence.' " (*Id.* at p. 574.) The Court of Appeal affirmed summary judgment, but rejected its previous holding in *Biljac*, explaining that "[w]e read *Ann M., supra*, 6 Cal.4th 666, and *Sharon P., supra*, 21 Cal.4th 1181, as having impliedly overruled *Biljac* and establishing that trial courts must rule on evidentiary objections in the summary judgment context or the objections will be deemed waived. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].)" (*Demps, supra*, 149 Cal.App.4th at p. 578.) The Court of Appeal noted that the *Biljac* procedure does not fulfill a trial court's obligation to rule on evidentiary objections in

the summary judgment setting. It held that "a trial court presented with timely evidentiary objections in proper form must expressly rule on the individual objections, and [if it] does not, the objections are deemed waived and the objected-to evidence included in the record." (*Ibid.*)

Other Courts of Appeal have either expressly or impliedly criticized the *Biljac* approach, finding it contravenes a trial court's duty to rule on evidentiary objections. (*Cheviot Vista Homeowners Assn. v. State Farm Fire & Casualty Co.* (2006) 143 Cal.App.4th 1486, 1500, fn. 9 [50 Cal.Rptr.3d 1] [*Biljac* procedure "is not an acceptable alternative to a ruling on the objections."]; *Swat-Fame, Inc. v. Goldstein* (2002) 101 Cal.App.4th 613, 623 [124 Cal.Rptr.2d 556] [*Biljac* was an "unacceptable circumvention of the court's obligation to rule on the evidentiary objections presented."], disapproved on other grounds in *Zamos v. Stroud* (2004) 32 Cal.4th 958, 973 [12 Cal.Rptr.3d 54, 87 P.3d 802]; *Sambrano v. City of San Diego* (2001) 94 Cal.App.4th 225, 235 [114 Cal.Rptr.2d 151] [*Biljac* "fosters the [legal] fiction that a trial court's failure to rule on evidentiary objections means the trial court has considered only admissible evidence."]; cf. *Tilley v. CZ Master Assn.* (2005) 131 Cal.App.4th 464, 479 [32 Cal.Rptr.3d 151] ["given the nature and volume of the objections, the trial court did not abuse its discretion" in issuing a *Biljac* ruling].)

Courts of Appeal have taken different approaches in resolving *Biljac* issues in the face of our waiver rule. Some courts have found waiver. (See, e.g., *Alexander v. Codemasters Group Limited* (2002) 104 Cal.App.4th 129, 140–141 [127 Cal.Rptr.2d 145]; *Swat-Fame, Inc. v. Goldstein, supra*, 101 Cal.App.4th at pp. 623–624; *Laird v. Capital Cities/ABC, Inc.* (1998) 68 Cal.App.4th 727, 736 [80 Cal.Rptr.2d 454].) Other courts have addressed the objections on the merits despite the lack of a trial court ruling. (See, e.g., *Tilley v. CZ Master Assn., supra*, 131 Cal.App.4th at p. 479; *Sambrano v. City of San Diego, supra*, 94 Cal.App.4th at p. 238; *Benavidez v. San Jose Police Dept.* (1999) 71 Cal.App.4th 853, 864 [84 Cal.Rptr.2d 157].)

In *City of Long Beach v. Farmers & Merchants Bank* (2000) 81 Cal.App.4th 780, 783–785 [97 Cal.Rptr.2d 140], the Court of Appeal applied what trial attorneys jocularly refer to as a "stamp-and-scream" rule and held that written evidentiary objections not ruled on by the trial court were preserved for appellate review where counsel twice orally requested a ruling on those written objections at the summary judgment hearing, thus presenting an exception to the *Ann M.* and *Sharon P.* waiver rule. (See also *Swat-Fame, Inc. v. Goldstein, supra*, 101 Cal.App.4th at p. 624, fn. 7 [allowing exception to waiver rule "when counsel specifically requests a ruling on evidentiary objections and the trial court nonetheless declines to rule"].) In *Vineyard Springs Estates v. Superior Court* (2004) 120 Cal.App.4th 633 [15 Cal.Rptr.3d

587], the Court of Appeal issued a writ of mandate commanding the trial court to (1) vacate its order denying summary judgment, (2) rule on all evidentiary objections, and (3) reconsider the summary judgment motion in light of its rulings on the evidentiary objections. (*Id.* at p. 643.)

### 2. *The Court of Appeal's Ruling on the Trial Court's Invocation of the* Biljac *Procedure in This Case.*

The Court of Appeal commented that "we believe the *Biljac* decision was substantially correct, and was surely more nearly correct than its critics have been." The court reasoned that section 437c does not require courts to rule expressly on evidentiary objections; it only requires express objections to be made.

Also, without mentioning *Ann M.* and *Sharon P.*, the Court of Appeal rejected the waiver rule. It held that even if section 437c could be read to require express rulings, "it does not mandate that, in the absence of express rulings the underlying objections are forfeited on appeal." Criticizing the waiver rule, the Court of Appeal commented, "The fact is that when a party properly brings an objection to the trial court's attention—i.e., when he files it in proper form—he has done everything he can or should be required to do to bring about a ruling. The fact that a trial court does not expressly rule on such objection should not be interpreted as a waiver of the party's objection."

Instead, the Court of Appeal concluded that, in the absence of express trial court rulings, the parties may still raise evidentiary issues on appeal. It explained that if the trial court fails to rule expressly on evidentiary objections relating to a summary judgment motion, the court's silence "effects an implied overruling of all objections, which are therefore preserved for appeal. The entire record is thus presumptively before the appellate court, and the burden is on the objecting party to show that evidence presumptively considered by the trial court should instead be disregarded in determining the propriety of the order on the merits."

The Court of Appeal held that Google's written objections to Reid's evidence were not waived. The court proceeded to decide the merits of the evidentiary objections Google raised on appeal, i.e., whether Reid's statistical and stray remarks evidence was admissible.

### 3. *To Preserve Evidentiary Issues on Appeal, Litigants Must Object to Specific Evidence in Writing Before the Summary Judgment Hearing or Orally at the Hearing, as Specified in the California Rules of Court*

Google claims that because the trial court issued a *Biljac* ruling, the waiver rule does not apply and its written evidentiary objections were preserved on

appeal, even though the trial court failed to rule on them expressly. Google argues that *Ann M.* and *Sharon P.* are distinguishable because we did not address the meaning of a *Biljac* ruling in those cases and focused instead on the trial court's complete failure to rule on objections. Reid contends that whether we deem Google's objections to be waived or preserved on appeal, the Court of Appeal still correctly determined the merits of Google's evidentiary claims on appeal. The Court of Appeal correctly found that the trial court erred in granting summary judgment because Reid's proffered admissible evidence presented triable issues of material fact. Reid comments that to the extent we seek his "input" on the waiver issue, he questions the fairness of absolutely barring a litigant from raising an evidentiary issue on appeal when the preclusion is through no fault of its own. He argues that the Court of Appeal's "presumed overruled" approach is preferable: "It achieves the goals of maximizing trial court discretion and avoiding administrative burden, while allowing a safety valve for extreme situations."

■ We agree that the trial court's failure to rule expressly on any of Google's evidentiary objections did not waive them on appeal. As noted above, "[e]videntiary objections not made at the hearing shall be deemed waived." (§ 437c, subd. (b)(5); see *id.*, subd. (d).) Section 437c defines "waiver" in terms of a party's failure to raise evidentiary objections at the hearing; it does not depend on whether or not the trial court expressly rules on the objections. Nevertheless, in *Sharon P.*, we found waiver under section 437c because we seemed to have focused on the trial court's failure to rule. (*Sharon P., supra*, 21 Cal.4th at pp. 1186–1187, fn. 1 ["[defendant] filed objections to the declarations of plaintiff and her counsel in the trial court, but the record contains no rulings on those objections"].) In *Ann M., supra*, 6 Cal.4th at page 670, footnote 1 (the only case *Sharon P.* cites), we relied on several cases in finding waiver, including *Golden West Baseball Co. v. Talley, supra*, 232 Cal.App.3d at page 1301, footnote 4.

■ In *Golden West*, the court found that, because the trial court failed to rule on evidentiary objections, those objections were considered to have been waived. (*Golden West Baseball Co. v. Talley, supra*, 232 Cal.App.3d at p. 1301, fn. 4.) Instead of relying on section 437c, subdivision (b)(5), the court relied on section 437c, subdivision (c). That subdivision states that the trial court must consider *all* evidence unless an objection to it has been raised *and sustained*. (§ 437c, subd. (c).)[4] It follows that the reviewing court must

---

[4] Section 437c, subdivision (c) provides, in pertinent part, that "[i]n determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court . . . ."

conclude the trial court considered any evidence to which it did not expressly sustain an objection. However, the subdivision does not mandate that, in the absence of express rulings, the underlying objections are waived on appeal. Thus, evidentiary objections made "at the hearing shall [not] be deemed waived" (§ 437c, subd. (b)(5)), even if the trial court fails to rule on them expressly.[5]

■ The question remains as to how and when evidentiary objections must be made to be deemed made "at the hearing," under section 437c, subdivision (b)(5) and (d). Because this determination involves a question of statutory construction, our review is de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432 [101 Cal.Rptr.2d 200, 11 P.3d 956].) "Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them 'their usual and ordinary meaning.' [Citation.] 'The statute's plain meaning controls the court's interpretation unless its words are ambiguous.' [Citations.] 'If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.]" (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 387–388 [97 Cal.Rptr.3d 464, 212 P.3d 736].)

One court found that written evidentiary objections filed with the court had been made "at the hearing," even though the objecting party had not raised them at the summary judgment hearing. (*Tilley v. CZ Master Assn., supra,* 131 Cal.App.4th at p. 479 ["section 437c, subdivision (b)(5) requires the objections to be made 'at the hearing' but not orally"]; see also *Sambrano v. City of San Diego, supra,* 94 Cal.App.4th at pp. 232, 234, 237–238 [merits of objection addressed where preserved in written submissions].) However, other courts have determined that written objections to summary judgment evidence were insufficient to preserve them on appeal because the objecting party failed to request a ruling on the evidentiary objections "at the hearing." (*Charisma R. v. Kristina S.* (2009) 175 Cal.App.4th 361, 369 [96 Cal.Rptr.3d 26]; *Jones v. P.S. Development Co., Inc.* (2008) 166 Cal.App.4th 707, 711, fn. 4 [82 Cal.Rptr.3d 882]; *Gallant v. City of Carson* (2005) 128 Cal.App.4th 705, 710 [27 Cal.Rptr.3d 318]; *Ali v. L.A. Focus Publication* (2003) 112 Cal.App.4th 1477, 1484 [5 Cal.Rptr.3d 791]; *Swat-Fame, Inc. v. Goldstein, supra,* 101 Cal.App.4th at p. 624, fn. 7; *Knight v. City of Capitola* (1992) 4 Cal.App.4th 918, 924, fn. 2 [6 Cal.Rptr.2d 874]; *Howell v. State Farm Fire & Casualty Co.* (1990) 218 Cal.App.3d 1446, 1459, fn. 9 [267 Cal.Rptr. 708]).

---

[5] We disapprove *Ann M. v. Pacific Plaza Shopping Center, supra,* 6 Cal.4th 666, 670, footnote 1 and *Sharon P. v. Arman, Ltd., supra,* 21 Cal.4th 1181, 1186, footnote 1, to the extent they hold that, when a trial court fails to rule on objections to summary judgment evidence, the objections are waived and are not preserved on appeal.

Yet another court held that evidentiary objections relating to a summary judgment motion may be raised either in writing before the hearing or orally at the hearing. (*Superior Dispatch, Inc. v. Insurance Corp. of New York* (2010) 181 Cal.App.4th 175, 192–193 [104 Cal.Rptr.3d 508].)

Because section 437c is ambiguous as to how and when evidentiary objections must be made to preserve them on appeal, we turn to the statute's purpose and legislative history.

### a. *Legislative History of Section 437c*

Our current summary judgment statute was enacted in 1973. (Stats. 1973, ch. 366, § 2, p. 807; *Haskell v. Carli, supra,* 195 Cal.App.3d at p. 130.) The pre-1973 version of section 437c permitted summary judgment " 'in the *discretion* of the court.' " (*Saldana v. Globe-Weis Systems Co.* (1991) 233 Cal.App.3d 1505, 1511 [285 Cal.Rptr. 385].) In revising section 437c, the Legislature intended "to abrogate any real discretion the trial court had in *granting* the motion. [Citation.]" (*Saldana v. Globe-Weis Systems Co., supra,* 233 Cal.App.3d at p. 1512, italics added.)

Before significant amendments were made in 1980, the trial court was to consider all *admissible* evidence set forth in the papers supporting or opposing the motion in ruling on the summary judgment motion. (Stats. 1978, ch. 949, § 2, p. 2930.) Also, waiver rules did not apply in summary judgment proceedings. (*Haskell v. Carli, supra,* 195 Cal.App.3d at p. 129.)

### (1) *1980 Amendment*

In 1980, the Legislature passed Senate Bill No. 1200 (1979–1980 Reg. Sess.) which added the following provisions to section 437c: (1) "[e]videntiary objections, not raised here in writing or orally at the hearing, shall be deemed waived"; and (2) "[i]n determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court . . . ." (Former § 437c, as amended by Stats. 1980, ch. 57, § 1, pp. 151, 152.)

The purpose of the bill was "to facilitate speedy resolution of summary judgment motions by requiring the parties to make timely evidentiary objections to summary judgment papers before the [trial] court." (Assem. Com. on Judiciary, 3d reading analysis of Sen. Bill No. 1200 (1979–1980 Reg. Sess.) Mar. 6, 1980.) It "would require parties to raise all evidentiary objections at the time of the hearing on the motion for summary judgment, in writing or

orally, or suffer waiver of such objections." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1200 (1979–1980 Reg. Sess.) as introduced Apr. 24, 1979, p. 3.)

The California Judges Association sponsored the bill (1) to invalidate several Court of Appeal decisions that had made it "possible for parties to raise on appeal for the first time evidentiary objections to the summary judgment papers" and (2) to apply the Evidence Code section 353 waiver rule—prohibiting reversal for the erroneous admission of evidence unless an objection was timely made—in the summary judgment context. (Judge Philip M. Saeta, letter to Sen. Com. on Judiciary re Sen. Bill No. 1200 (1979–1980 Reg. Sess.) Dec. 21, 1979 (Judge Saeta letter); Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1200 (1979–1980 Reg. Sess.) as introduced Apr. 24, 1979, pp. 2–3.)

Additionally, the bill eliminated the "requirement that the evidence considered by the court be admissible, and . . . instead allow[ed] the court to consider all evidence set forth in the papers, except that to which objections ha[d] been sustained." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1200 (1979–1980 Reg. Sess.) as introduced Apr. 24, 1979, p. 4.) Judge Saeta's letter maintained that the proposed amendments would "force the opposing parties to go through the moving papers and make those objections which are deemed to be applicable and have the trial judge rule on those objections just like the situation at trial. . . . Then on any appeal the merits of the [summary judgment] ruling can be addressed without going into minor evidentiary matters not deemed important enough to be raised at the trial level." (Judge Saeta letter, *supra*, at p. 2.)

### (2) *1990 Amendment*

Prior to the 1990 amendment, objections *"not made either in writing or orally at the hearing"* were deemed waived.[6] (Former § 437c, subd. (b), as amended by Stats. 1984, ch. 171, § 1, pp. 544, 545, italics added.) As introduced, Senate Bill No. 2594 (1989–1990 Reg. Sess.) proposed the following change to section 437c, subdivision (b): "Evidentiary objections *not made in writing at least two court days prior to the hearing* shall be deemed waived." (Sen. Bill No. 2594 (1989–1990 Reg. Sess.) as introduced Mar. 1, 1990, p. 2, italics added.) The Legislature then changed this language to its current form, providing that, "Evidentiary objections *not made at the hearing* shall be deemed waived." (§ 437c, subd. (b), italics added, as

---

[6] A 1984 statutory amendment substituted "made either" for "raised here" so that the statute read: "Evidentiary objections not made either in writing or orally at the hearing shall be deemed waived." (Former § 437c, subd. (b), as amended by Stats. 1984, ch. 171, § 1, pp. 544, 545.)

amended by Stats. 1990, ch. 1561, § 2, pp. 7330, 7331, enacting Sen. Bill No. 2594 (1989–1990 Reg. Sess.) as amended May 7, 1990.)

Thus, the Legislature deleted the proposed language that exempted only written objections from waiver and deleted the then existing statutory language "either in writing or orally," so that the statute required evidentiary objections to be made "at the hearing" to avoid waiver. By removing the words "in writing" and "orally," we can reasonably infer that the Legislature intended not to restrict the manner in which objections had to be presented, as had been proposed, leaving the statute neutral regarding the objections' proper form. The 1990 amendment simply required that objections be presented to the trial court, rather than being made for the first time on appeal.

Legislative history supports this conclusion. One purpose of the 1990 amendment was to redefine what could be resolved on a motion for summary adjudication of issues. The Legislature expressly declared that: "It is also the intent of this legislation to stop the practice of adjudication of facts or adjudication of issues that do not completely dispose of a cause of action or a defense." (Stats. 1990, ch. 1561, § 1, pp. 7329, 7330.) A second purpose was to "overturn[]" two Court of Appeal cases holding that the competency of witnesses could be challenged for the first time on appeal. (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 2594 (1989–1990 Reg. Sess.) as amended Aug. 22, 1990, p. 2.) In that regard, the Legislature expressly declared: "It is the intent of this legislation to provide that all objections to the form and substance of the moving and opposing papers shall be first made in the trial court and not on appeal by the parties or by the appellate court and to expressly overrule the rules stated in *Witchell v. DeKorne* [(1986)] 179 [Cal.App.3d] 965 [225 Cal.Rptr. 176] and *Zuckerman v. Pacific Savings Bank* [(1986)] 187 [Cal.App.3d] 1394 [232 Cal.Rptr. 458]." (Stats. 1990, ch. 1561, § 1, pp. 7329–7330.) The overall purpose of the bill was "to make the summary judgment procedure more efficient and to reduce the opportunity for abuse of the procedure." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 2594 (1989–1990 Reg. Sess.) as amended May 7, 1990, p. 2; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 2594 (1989–1990 Reg. Sess.) as amended Aug. 22, 1990, p. 2; see also Judicial Council of Cal., letter to Governor Deukmejian re Sen. Bill No. 2594 (1989–1990 Reg. Sess.) Sept. 17, 1990 [supporting the bill's requirement that parties raise evidentiary objections in the trial court because it would save time for appellate courts and simplify civil proceedings].)

In accord with the Legislature's second purpose, it also amended section 437c to add the following sentence to subdivision (d): "Any objections based on the failure to comply with the requirements of this subdivision [regarding the competence of declarants] shall be made at the hearing or shall be

deemed waived." (Stats. 1990, ch. 1561, § 2, pp. 7330, 7331.) And, as mentioned above, the Legislature at the same time deleted the phrase "either in writing or orally" from section 437c, subdivision (b), to provide that, "Evidentiary objections not made at the hearing shall be deemed waived."

The 1990 amendment of section 437c by its terms required that objections be made in the trial court to avoid waiver, but did not designate how those objections needed to be presented. Because the statute and legislative history are silent as to the specific manner in which evidentiary objections must be made, we presume that the Legislature intended no changes to the established procedure for making evidentiary objections. Thus, the California Rules of Court govern. (See Cal. Const., art. VI, § 6, subd. (d); *Cantillon v. Superior Court* (1957) 150 Cal.App.2d 184, 187 [309 P.2d 890]; see also *Mann v. Cracchiolo* (1985) 38 Cal.3d 18, 29 [210 Cal.Rptr. 762, 694 P.2d 1134] [courts may adopt "rules with the force of law" with respect to summary judgment motions].)

At the time of the 1990 amendment of section 437c, California Rules of Court, former rule 343 (current rule 3.1352) explained how and when summary judgment objections were made. The Judicial Council first adopted former rule 343 in 1984. The Rules of Court were renumbered effective January 1, 2007. Substantively the same as when first adopted in 1984, current rule 3.1352 states: "A party desiring to make objections to evidence in the papers on a motion for summary judgment must either: [¶] (1) Submit objections in writing under rule 3.1354; or [¶] (2) Make arrangements for a court reporter to be present at the hearing." As with former rule 343 and current rule 3.1352, both former rule 345 and current rule 3.1354 require written objections to be served and filed before the hearing. (See now Cal. Rules of Court, rule 3.1354(a).) Thus, both before and after section 437c's 1990 amendment, the Rules of Court expressly allowed parties to choose how to record their objections.

■ At the summary judgment hearing, the parties have the opportunity to persuade the trial court and respond to its inquiries. (*Mediterranean Construction Co. v. State Farm Fire & Casualty Co.* (1998) 66 Cal.App.4th 257, 260 [77 Cal.Rptr.2d 781].) At that hearing, the court considers the motion, any opposition to the motion, any reply, and all supporting papers submitted before the hearing, as well as arguments and evidentiary objections made at the hearing. (See § 437c, subds. (a), (b)(1)–(4); Cal. Rules of Court, rules 3.1352, 3.1354(a).) Therefore, written evidentiary objections made *before* the hearing, as well as oral objections made at the hearing are deemed made "at the hearing" under section 437c, subdivisions (b)(5) and (d), so that

either method of objection avoids waiver.[7] The trial court must rule expressly on those objections.[8] (See *Vineyard Springs Estates v. Superior Court, supra*, 120 Cal.App.4th at pp. 642–643 [trial courts have a duty to rule on evidentiary objections presented in proper form].) If the trial court fails to rule, the objections are preserved on appeal.

We recognize that it has become common practice for litigants to flood the trial courts with inconsequential written evidentiary objections, without focusing on those that are critical.[9] Trial courts are often faced with "innumerable objections commonly thrown up by the parties as part of the all-out artillery exchange that summary judgment has become." (*Mamou v. Trendwest Resorts, Inc.* (2008) 165 Cal.App.4th 686, 711–712 [81 Cal.Rptr.3d 406].) Indeed, the *Biljac* procedure itself was designed to ease the extreme burden on trial courts when all "too often" "litigants file blunderbuss objections to virtually every item of evidence submitted." (*Demps, supra*, 149 Cal.App.4th at pp. 578–579, fn. 6; see *Biljac, supra*, 218 Cal.App.3d at p. 1419, fn. 3; see also *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 248, 254 & fn. 3 [100 Cal.Rptr.3d 296] [employer filed 324 pages of evidentiary objections, consisting of 764 specific objections, which the Court of Appeal characterized as the "poster child" for abusive objections].) To counter that disturbing trend, we encourage parties to raise only meritorious objections to items of evidence that are legitimately in dispute and pertinent to the disposition of the summary judgment motion. In other words, litigants should focus on the objections that really count. Otherwise, they may face informal reprimands or formal sanctions for engaging in abusive practices. At the very least, at the summary judgment hearing, the parties—with the trial court's

---

[7] We disapprove *Charisma R. v. Kristina S., supra*, 175 Cal.App.4th 361, 369; *Jones v. P.S. Development Co., Inc., supra*, 166 Cal.App.4th 707, 711, footnote 4; *Gallant v. City of Carson, supra*, 128 Cal.App. 4th 705, 710; *Ali v. L.A. Focus Publication, supra*, 112 Cal.App.4th 1477, 1484; *Swat-Fame, Inc. v. Goldstein, supra*, 101 Cal.App.4th 613, 624, footnote 7; *City of Long Beach v. Farmers & Merchants Bank, supra*, 81 Cal.App.4th 780, 783–785; *Knight v. City of Capitola, supra*, 4 Cal.App.4th 918, 924, footnote 2; and *Howell v. State Farm Fire & Casualty Co., supra*, 218 Cal.App.3d 1446, 1459, footnote 9, to the extent they hold that litigants must raise written objections orally at the hearing to preserve them on appeal.

[8] We disapprove *Biljac Associates v. First Interstate Bank, supra*, 218 Cal.App.3d 1410, 1419, 1424, to the extent it permits the trial court to avoid ruling on specific evidentiary objections.

[9] Amicus curiae California Academy of Appellate Lawyers represents that "[i]n the real world, . . . most evidentiary objections do not matter very much to the [summary judgment] decision." Similarly, amicus curiae Association of Southern California Defense Counsel comments that "[a]ll too often trial courts face a flood of evidentiary objections, objections that may be addressed to matters that are tangential at best, at least given the trial court's view of the critical issues or evidence." Amicus curiae California Academy of Appellate Lawyers asks that we pronounce a "message to trial lawyers that if they want the trial court to make meaningful rulings, they should facilitate its doing so by choosing their battles wisely and only objecting to evidence when it matters."

encouragement—should specify the evidentiary objections they consider important, so that the court can focus its rulings on evidentiary matters that are critical in resolving the summary judgment motion.

### b. *Application of Waiver Rule*

In this case, Google submitted 31 pages of objections, raising more than 175 separate objections to evidence submitted by Reid. At least 50 of the objections were based simply on "relevance." At the summary judgment hearing, Google generally referred to, and asked the court to rule on, all of its previously filed written objections. In a written order, the trial court ruled as follows: "The Court declines to render formal rulings on evidentiary objections. In ruling, the Court relied on competent and admissible evidence pursuant to *Biljac Associates v. First Interstate Bank*[, *supra*,] 218 Cal.App.3d 1410, 1419–1429."

The Court of Appeal refused to find waiver and explained: "The fact is that when a party properly brings an objection to the trial court's attention—i.e., when he *files it* in proper form—he has done everything he can or should be required to do to bring about a ruling." However, this case proves otherwise. At the summary judgment hearing, Google incorporated by reference its written objections, but also specifically objected to four items of evidence submitted by Reid. Thus, Google had the opportunity to significantly narrow its objections and wisely focused on what it considered to be key pieces of disputed evidence.

Nevertheless, because Google submitted its evidentiary objections in proper form in writing and orally, all of its objections were preserved on appeal. Despite the Court of Appeal's finding that the lack of a trial court ruling does not create waiver, Google claims that the Court of Appeal essentially applied waiver principles. It notes that the Court of Appeal "presumed" that the trial court's *Biljac* ruling was an implied overruling of its evidentiary objections and that the trial court considered all of the objected-to evidence. Google argues that the Court of Appeal incorrectly interpreted the *Biljac* ruling as a blanket admission of all objected-to evidence and that its adoption of this "presumed admitted rule" denied Google the opportunity to "squarely appeal issues of admissibility" and obtain a ruling on its objections. Instead, according to Google, adoption of a "presumed sustained rule" is more appropriate under the well-established principle that trial court rulings are construed in favor of affirming the lower court's order. Google asks that we adopt the presumed sustained rule, arguing that "it is more logically consistent to presume that the trial court, in granting summary judgment and issuing a *Biljac* ruling, implicitly ruled in favor of the prevailing party on all evidentiary objections."

Reid responds that a presumed sustained rule is contrary to the clear wording of section 437c, subdivision (c), that Google overlooks the distinction between waived and presumptively overruled objections, and that the presumed overruled approach taken by the Court of Appeal is supported by the statute. We agree.

Section 437c, subdivision (c) states, in relevant part: "In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made *and sustained* by the court . . . ." (Italics added.) Because the trial court here did not sustain any of the objections, let alone make any evidentiary rulings, it was required by section 437c, subdivision (c) to consider all of Reid's evidence. Similarly, "[o]n appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz, supra,* 24 Cal.4th at p. 334.) Thus, Google's presumed sustained approach is not supported by the statute.

On the other hand, the Court of Appeal's presumed overruled approach—whereby it viewed the objectionable evidence as having been admitted into evidence—is consistent with section 437c, subdivision (c), requiring the trial court to consider all the evidence except that to which objections were made and sustained. Google had a full opportunity to pursue its objections on appeal. Having found that the lack of a ruling does not create waiver, the Court of Appeal held that Google's objections were presumptively overruled, but—importantly—were preserved for appeal. Google's contention that there is no distinction between waived objections and those presumptively overruled overlooks that waived objections will not be considered on appeal (*Ann M., supra,* 6 Cal.4th at p. 670, fn. 1), while presumptively overruled objections can still be raised on appeal, with the burden on the objector to renew the objections in the appellate court.[10] Thus, the Court of Appeal correctly determined that if the trial court fails to rule expressly on specific evidentiary objections, it is presumed that the objections have been overruled, the trial court considered the evidence in ruling on the merits of the summary judgment motion, and the objections are preserved on appeal.

Here, the Court of Appeal considered Google's evidentiary objections on the merits, in particular the admissibility of the statistical evidence and of certain alleged ageist comments under the stray remarks rule. While Google

---

[10] Indeed, Google never raised its presumed sustained argument in the Court of Appeal. Instead, Google took on the burden of renewing its evidentiary objections in the Court of Appeal.

may disagree with the Court of Appeal's resolution of its evidentiary claims, nevertheless, it has not been prejudiced by any application of a waiver rule.

Alternatively, Google asks that the matter be remanded to the trial court for rulings on its evidentiary objections. It claims that the Court of Appeal's attempt to cure the trial court's ambiguous *Biljac* ruling by deciding evidentiary issues for the first time "improperly seized the trial court's duties of determining the parameters of the admissible evidentiary record," and "breache[d] the review limitations placed upon it by the abuse of discretion standard." On the other hand, Reid argues that the Court of Appeal correctly used a de novo review standard since the trial court made no evidentiary rulings, and that a remand is not necessary and would only result in delay. Agreeing with the Court of Appeal, both Reid and amici curiae advocate for the application of a de novo review standard in general, even where the trial court made evidentiary rulings. The Court of Appeal explained: "Because summary judgment is decided entirely on the papers, and presents only a question of law, it affords very few occasions, if any, for truly discretionary rulings on questions of evidence. Nor is the trial court often, if ever, in a better position than a reviewing court to weigh the discretionary factors."

We agree in part with Reid. First, because there was no exercise of trial court discretion, the Court of Appeal had no occasion to determine whether the trial court abused it. Second, Google expressly invited the Court of Appeal to address its evidentiary objections, which the Court of Appeal reviewed de novo, consistent with the general standard of review applicable to summary judgment rulings, that any doubts as to the propriety of granting a summary judgment motion should be resolved in favor of the party opposing the motion. (*Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868, 874 [191 Cal.Rptr. 619, 663 P.2d 177].) Thus, we need not decide generally whether a trial court's rulings on evidentiary objections based on papers alone in summary judgment proceedings are reviewed for abuse of discretion or reviewed de novo.

Finally, because Google did not ask the Court of Appeal to remand the matter to the trial court for evidentiary rulings, its remand request comes too late. In any event, no purpose would be served in returning this matter to the trial court to re-review objections already considered by the Court of Appeal.

## B. *Stray Remarks Doctrine*

Google contends that the Court of Appeal should have applied the stray remarks doctrine, i.e., should have categorized the alleged statements by Hölzle and Rosing as irrelevant stray remarks, and disregarded them in reviewing the merits of the summary judgment motion. Specifically, Google

claims that the Court of Appeal erred in considering (1) Hölzle's statements that Reid was "slow," "fuzzy," "sluggish," "lethargic," did not "display a sense of urgency," and "lack[ed] energy" and his ideas were "obsolete" and "too old to matter"; (2) Rosing's statement to Reid at or around the time of his termination that he was not a "cultural fit"; and (3) coworkers' comments referring to Reid as an "old man" and "old fuddy-duddy," and a coworker's joke that his office placard should be an "LP" instead of a "CD." Google argues that the statements were irrelevant because they were made by nondecision makers, were ambiguous, and were unrelated to the adverse employment decision.[11]

### 1. *Origin and Evolution of the Stray Remarks Doctrine*

The term "stray remarks" first appeared in a concurring opinion by Justice O'Connor in *Price Waterhouse v. Hopkins* (1989) 490 U.S. 228, 276 [104 L.Ed.2d 268, 109 S.Ct. 1775] (*Price Waterhouse*). In that case, the plaintiff, a senior manager at a nationwide professional accounting firm, sued her employer for sex discrimination when it refused to re-propose her for partnership. (*Id.* at pp. 231–232.) In her concurrence, Justice O'Connor stated that "stray remarks"—"statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process itself"—do not constitute direct evidence of decision makers' "substantial negative reliance on an illegitimate criterion in reaching their decision." (*Id.* at p. 277.) Unlike direct evidence of discriminatory animus, stray remarks, "standing alone," do not suffice to shift the burden of persuasion to the employer; decision makers may make neutral, nondiscriminatory comments about an employee's race or gender, such as referencing a " 'lady candidate.' " (*Ibid.*) However, Justice O'Connor explained that stray remarks can be probative of discrimination, and ultimately concluded that the plaintiff provided the requisite direct evidence that decision makers had unlawfully based their decision on gender. (*Ibid.*) Such evidence included remarks by a partner suggesting she should " 'walk more femininely, talk more femininely, dress more femininely, wear make-up, have her hair styled, and wear jewelry' " to improve her chances for partnership, and comments by other partners describing the plaintiff as " 'macho' " and advising her to take " 'a course at charm school.' " (*Id.* at p. 235.)

Since *Price Waterhouse*, federal circuit courts have adopted and notably expanded Justice O'Connor's analysis in employment discrimination cases to create what has become known as the stray remarks doctrine. (See Reinsmith,

---

[11] Reid argues that Google failed to object in the trial court to nearly all of the evidence it now characterizes as inadmissible stray remarks. Because the Court of Appeal considered, on the merits, Google's objections to all of the remarks it argued were stray, we need not determine whether those objections were made in the trial court.

*Proving an Employer's Intent: Disparate Treatment Discrimination and the Stray Remarks Doctrine After* Reeves v. Sanderson Plumbing Products (2002) 55 Vand. L.Rev. 219, 244–245.) Under this doctrine, federal circuit courts deem irrelevant any remarks made by nondecisionmaking coworkers or remarks made by decisionmaking supervisors outside of the decisional process, and such stray remarks are insufficient to withstand summary judgment. (See, e.g., *Hill v. Lockheed Martin Logistics Management, Inc.* (4th Cir. 2004) 354 F.3d 277, 283, 295–296 (in bank) [coworker's comments that plaintiff was a " 'useless old lady' " who needed to retire, was a " 'troubled old lady,' " and was a " 'damn woman' " did not influence the decisional process and, therefore, were not relevant]; *Waggoner v. City of Garland* (5th Cir. 1993) 987 F.2d 1160, 1166 [direct supervisor's statements that plaintiff was an "old fart" and that a younger person could do faster work deemed "a mere 'stray remark' . . . insufficient to establish age discrimination"].) Moreover, federal circuit courts have treated ambiguous comments as stray remarks because they do not sufficiently indicate discriminatory animus. (See, e.g., *Fortier v. Ameritech Mobile Communications, Inc.* (7th Cir. 1998) 161 F.3d 1106, 1108, 1113 [supervisor's comments that she wanted "new blood," a "quick study," and someone with "a lot of energy" did not reflect age bias]; *Nesbit v. Pepsico, Inc.* (9th Cir. 1993) 994 F.2d 703, 705 [supervisor's comment that " '[w]e don't necessarily like grey hair' " was "uttered in an ambivalent manner" and therefore "not tied directly to" plaintiff's termination].)

In California, several appellate cases have analyzed certain remarks in terms of whether they were stray. However, none of these cases explicitly adopted or addressed the stray remarks doctrine. Instead, they considered the remarks in totality with the other circumstances of the case. Three of these cases affirmed summary judgment for the employer, though their outcomes turned more on each plaintiff's failure to produce prima facie evidence of discrimination than on a strict application of the stray remarks doctrine. (*Gibbs v. Consolidated Services* (2003) 111 Cal.App.4th 794, 798, 801 [4 Cal.Rptr.3d 187] [although supervisor had commented plaintiff was "getting too old," employer subsequently established plaintiff lacked computer and management skills necessary for restructured company operations]; *Slatkin v. University of Redlands* (2001) 88 Cal.App.4th 1147, 1160 [106 Cal.Rptr.2d 480] [plaintiff's allegation of anti-Semitic animus rested on "an isolated remark by a person not involved in the adverse employment decision"]; *Horn v. Cushman & Wakefield Western, Inc.* (1999) 72 Cal.App.4th 798, 801–803, 809 [85 Cal.Rptr.2d 459] (*Horn*) [plaintiff's allegation of age bias supported only by nondecisionmaking manager's single remark that " 'this is 1994, haven't you ever heard of a fax before?' "].) A fourth case affirmed summary judgment for the employer, but turned entirely on the plaintiff's failure to establish a prima facie case of pregnancy discrimination; the plaintiff failed to make the requisite showing that her supervisor knew she was pregnant or that she was

visibly pregnant at the time of termination. (*Trop v. Sony Pictures Entertainment, Inc.* (2005) 129 Cal.App.4th 1133, 1145, 1147–1148 [29 Cal.Rptr.3d 144].)

In the remaining two decisions, the courts reversed summary judgment or summary adjudication, examining the discriminatory remarks in context and refusing to discount categorically those remarks as stray. (*Sada v. Robert F. Kennedy Medical Center* (1997) 56 Cal.App.4th 138, 145, 154, fn. 15 [65 Cal.Rptr.2d 112] [decision maker's derogatory comments about Mexicans during plaintiff's job interview were not isolated remarks immaterial in proving discriminatory motive, but were relevant comments raising inference hiring decision based on plaintiff's ancestry]; *Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, 1094 [38 Cal.Rptr.3d 240] [decision maker's " 'intonations about [plaintiff's] being pregnant' " to the effect that plaintiff had mentally " 'checked out' " made during discussion whether to retain plaintiff as employee were evidence of discriminatory motive].)

In this case, the Court of Appeal rejected application of the stray remarks doctrine, disagreeing "with suggestions that a 'single, isolated discriminatory comment' [citation] or comments that are 'unrelated to the decisional process' are 'stray' and therefore, insufficient to avoid summary judgment [citation]." The court recognized "[t]here are certainly cases that in the context of the evidence as a whole, the remarks at issue provide such weak evidence that a verdict resting on them cannot be sustained. But such judgments must be made on a case-by-case basis in light of the entire record, and on summary judgment the sole question is whether they support an inference that the employer's action was motivated by discriminatory *animus*. Their 'weight' as evidence cannot enter into the question."

### 2. The Court of Appeal in This Case Correctly Rejected the Stray Remarks Doctrine's Categorical Exclusion of Evidence

Google contends that we should adopt the judicially created stray remarks doctrine so that California courts can "disregard discriminatory comments by co-workers and nondecisionmakers, or comments unrelated to the employment decision" "to ensure that unmeritorious cases principally supported by such remarks are disposed of before trial." It argues that application of the stray remarks doctrine is an important means for trial courts to sift out cases "too weak to raise a rational inference that discrimination occurred." (*Guz, supra,* 24 Cal.4th at p. 362.) On the other hand, Reid argues that courts should not view the remarks in isolation, as Google invites, but that those remarks should be considered with all the evidence in the record. As explained below, we agree with Reid for several reasons.

First, strict application of the stray remarks doctrine, as urged by Google, would result in a court's categorical exclusion of evidence even if the evidence was relevant. An age-based remark not made directly in the context of an employment decision or uttered by a nondecision maker may be relevant, circumstantial evidence of discrimination. (*Shager v. Upjohn Co.* (7th Cir. 1990) 913 F.2d 398, 402 (*Shager*) [stray remark "may be relevant evidence, with greater or less probative value depending on the precise character of the remark"].) Indeed, Justice O'Connor, who coined the term "stray remarks," stated that stray remarks do not constitute "direct evidence" of discriminatory animus, but acknowledged that such remarks can be "probative." (*Price Waterhouse, supra*, 490 U.S. at p. 277 (conc. opn. of O'Connor, J.).)

In a later decision authored by Justice O'Connor, the United States Supreme Court declined to apply strictly the stray remarks doctrine in an age discrimination case relating to evidence of a decision maker's remark not made in the direct context of the employment decision. (*Reeves v. Sanderson Plumbing Products, Inc.* (2000) 530 U.S. 133, 152–153 [147 L.Ed.2d 105, 120 S.Ct. 2097] (*Reeves*).) In *Reeves*, a jury had returned a verdict in favor of an employee. The federal district court denied the employer's motion for judgment as a matter of law, but the Fifth Circuit Court of Appeals reversed the judgment, finding that no rational trier of fact could have found that the employee was fired because of his age.[12] The court of appeals acknowledged " 'the potentially damning nature' " of the decision maker's age-related comments, but nevertheless discounted them on the ground they " 'were not made in the direct context of [the plaintiff's] termination.' " (*Reeves*, at p. 152.)

The high court criticized the court of appeals for disregarding those comments along with other evidence presented by the plaintiff, and for failing to draw all reasonable inferences in favor of the plaintiff. It noted that, by disregarding critical evidence favorable to the plaintiff and crediting evidence presented by the employer, the court of appeals "impermissibly substituted its judgment concerning the weight of the evidence for the jury's." (*Reeves, supra*, 530 U.S. at p. 153.) The court held that if the plaintiff establishes a prima facie case and demonstrates pretext through circumstantial evidence, including evidence of discriminatory comments by a decision maker unrelated to the adverse employment decision, then a reasonable trier of fact may infer intentional discrimination. (*Id.* at pp. 148, 153–154.) Thus, *Reeves*

---

[12] The court in *Reeves* noted that, under the federal rules, the standard for granting summary judgment (Fed. Rules Civ.Proc., rule 56, 28 U.S.C.) "mirrors" the standard for judgment as a matter of law (Fed. Rules Civ.Proc., rule 50, 28 U.S.C.), such that " 'the inquiry under each is the same,' " i.e., that the court must review the record " 'taken as a whole.' " (*Reeves, supra*, 530 U.S. at p. 150.)

indicates that even if age-related comments can be considered stray remarks because they were not made in the direct context of the decisional process, a court should not categorically discount the evidence if relevant; it should be left to the fact finder to assess its probative value.

In a decision after *Reeves*, the Fifth Circuit Court of Appeals impliedly rejected the stray remarks doctrine. The court warned that the stray remarks doctrine " 'is itself inconsistent with the deference appellate courts traditionally allow juries regarding their view of the evidence presented and so should be narrowly cabined.' [Citation.]" (*Russell v. McKinney Hospital Venture* (5th Cir. 2000) 235 F.3d 219, 229 (*Russell*).) The court concluded that "[a]ge-related remarks are appropriately taken into account when analyzing . . . evidence . . ." of discrimination "even if not in the direct context of the decision and even if uttered by one other than the formal decisionmaker, provided that the individual is in a position to influence the decision." (*Ibid.*)

Consistent with *Reeves* and *Russell*, we have stated that in ruling on a motion for summary judgment, "the court may not weigh the plaintiff's evidence or inferences against the defendants' as though it were sitting as the trier of fact." (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 856.) Similarly, here, the Court of Appeal noted that by discounting age-related comments as stray remarks, a court would be permitted to do what it is otherwise prohibited from doing on a summary judgment motion, i.e., weigh the evidence. (See, e.g., *Horn, supra,* 72 Cal.App.4th at p. 809 [acknowledging trial court was prohibited from weighing the evidence, but then finding stray remark was *"entitled to virtually no weight* in considering whether the firing was pretextual or whether the decisionmaker harbored discriminatory animus" (italics added)].)

■  Google contends that a trial court must assess the relative strength and nature of the evidence presented on summary judgment in determining if the plaintiff has "created only a weak issue of fact." (*Reeves, supra,* 530 U.S. at p. 148.) However, Google overlooks that a review of all of the evidence is essential to that assessment. The stray remarks doctrine, as advocated by Google, goes further. It allows a court to weigh and assess the remarks in isolation, and to disregard the potentially damaging nature of discriminatory remarks simply because they are made by "nondecisionmakers, or [made] by decisionmakers unrelated to the decisional process." (*Price Waterhouse, supra,* 490 U.S. at p. 277 (conc. opn. of O'Connor, J.); see *Reeves, supra,* 530 U.S. at pp. 152–153; *Tomassi v. Insignia Financial Group, Inc.* (2d Cir. 2007) 478 F.3d 111, 116 ["[w]e did not mean to suggest that remarks should first be categorized either as stray or not stray and then disregarded if they fall into the stray category"].) Google also argues that ambiguous remarks are stray,

irrelevant, prejudicial, and inadmissible. However, "the task of disambiguating ambiguous utterances is for trial, not for summary judgment." (*Shager, supra*, 913 F.2d at p. 402 ["On a motion for summary judgment the ambiguities . . . must be resolved against the moving party."].) Determining the weight of discriminatory or ambiguous remarks is a role reserved for the jury. (See *Reeves, supra*, 530 U.S. at pp. 152–153.) The stray remarks doctrine allows the trial court to remove this role from the jury.

Second, strict application of the stray remarks doctrine would be contrary to the procedural rules codified by statute and adopted in our cases. Section 437c, subdivision (c), directs that, at the summary judgment stage, courts "shall consider all of the evidence set forth in the papers . . . and all inferences reasonably deducible from the evidence." (See also *Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 856 ["court[s] must consider all of the evidence and all of the inferences drawn therefrom"].)

■ Google argues that adoption of the stray remarks doctrine provides a necessary means for courts to "winnow out" weak cases that fail to raise a rational inference of discrimination. However, a totality of circumstances analysis successfully winnows out cases "too weak to raise a rational inference that discrimination occurred." (*Guz, supra*, 24 Cal.4th at p. 362 [court may grant summary judgment where " 'the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred' "].) " 'Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors,' " including " 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case . . . .' " (*Ibid.*, quoting *Reeves, supra*, 530 U.S. at pp. 148–149.) Although stray remarks may not have strong probative value when viewed in isolation, they may corroborate direct evidence of discrimination or gain significance in conjunction with other circumstantial evidence. Certainly, who made the comments, when they were made in relation to the adverse employment decision, and in what context they were made are all factors that should be considered. Thus, a trial court must review and base its summary judgment determination on the totality of evidence in the record, including any relevant discriminatory remarks.

■ Third, the stray remarks cases merely demonstrate the "common-sense proposition" that a slur, in and of itself, does not prove actionable discrimination. (*Shager, supra*, 913 F.2d at p. 402; see also *Waggoner v. City of Garland, supra*, 987 F.2d at p. 1166 ["mere stray remarks, *with nothing more*, are insufficient to establish a claim of age discrimination." (italics added)].) A stray remark alone may not create a triable issue of age discrimination . . .

(See, e.g., *Merrick v. Farmers Ins. Group* (9th Cir. 1990) 892 F.2d 1434, 1438–1439 [employer's statement that replacement employee had been hired because he was a " 'bright, intelligent, knowledgeable young man' " was insufficient to defeat summary judgment].) But when combined with other evidence of pretext, an otherwise stray remark may create an "ensemble [that] *is* sufficient to defeat summary judgment." (*Shager, supra,* 913 F.2d at p. 403, italics added.)

Fourth, because there is no precise definition of who is a decision maker or what constitutes remarks made outside of the decisional process in the employment context, federal circuit courts have diverged in determining what constitutes a stray remark. While courts characterize remarks by nondecision makers as stray, they disagree as to who is a decision maker. Some courts have required that the speaker be the final decision maker in order to consider the remark as evidence of discriminatory animus or pretext. (See, e.g., *Hall v. Giant Food, Inc.* (D.C. Cir. 1999) 336 U.S. App.D.C. 63 [175 F.3d 1074, 1079–1080].) Other courts have considered remarks made by a speaker merely involved in the decisionmaking. (See, e.g., *Rose v. New York City Bd. of Education* (2d Cir. 2001) 257 F.3d 156, 162 [stray remark analysis focused on speaker's influence in the "decision making process"]; *Woodson v. Scott Paper Co.* (3d Cir. 1997) 109 F.3d 913, 922 [stray remarks analysis focused on whether speaker was in " 'the chain of decisionmakers who had the authority to hire and fire plaintiff' "].) Yet other courts permit discriminatory remarks made by subordinate employees that implicate decision makers. (See, e.g., *Bergene v. Salt River Project Agriculture Improvement & Power Dist.* (9th Cir. 2001) 272 F.3d 1136, 1141 [manager's motive imputed to employer though manager was not "ultimate decisionmaker"]; see also *Clark v. Claremont University Center* (1992) 6 Cal.App.4th 639, 668–669 [8 Cal.Rptr.2d 151] [racially biased statement by author of negative recommendation letter to a university appointments, promotions, and tenure committee properly considered because decisionmaking body relied on the letter author's recommendation].)

As noted by the court in *Shager,* the stray remarks doctrine contains a major flaw because discriminatory remarks by a nondecisionmaking employee *can* influence a decision maker. "If [the formal decision maker] acted as the conduit of [an employee's] prejudice—his cat's paw—the innocence of [the decision maker] would not spare the company from liability." (*Shager,* 913 F.2d at p. 405.) Many federal circuit courts have adopted *Shager's* analysis, finding that discriminatory comments by someone in a position to influence a decision maker were relevant. (See, e.g., *Russell, supra,* 235 F.3d at p. 227 [citing cases in which courts found subordinates' discriminatory comments influenced decision makers]; *Hunt v. City of Markham* (7th Cir. 2000) 219 F.3d 649, 652–653; *Kendrick v. Penske Transportation Services, Inc.* (10th Cir. 2000) 220 F.3d 1220, 1231.)

Federal courts have also disagreed about how close in time the discriminatory remark must be to the unfavorable employment decision to categorize it as stray. Some courts have permitted evidence of comments made years before the adverse employment decision, while others have disregarded remarks made just months before the decision. (Compare *Danzer v. Norden Systems, Inc.* (2d Cir. 1998) 151 F.3d 50, 54–55 [reversed summary judgment for employer where supervisor called current staff "a bunch of 'alt[er] cockers' " or " 'old fogies' " more than a year before plaintiff's job elimination because they were "part of a sequence of events *culminating* in his discharge"] and *Brewer v. Quaker State Oil Refining Corp.* (3d Cir. 1995) 72 F.3d 326, 333 [reversed summary judgment for employer where statement in company newsletter two years before plaintiff's termination described two new executives as " 'star young men,' " explaining, " '[t]hat age group is our future' "] with *Ptasznik v. St. Joseph Hospital* (7th Cir. 2006) 464 F.3d 691, 693, 695 [affirmed summary judgment for employer on age and national origin discrimination claims though supervisor made comments that plaintiff was " 'too old,' " " 'too Polish,' " and " 'stupid' " one to three months before termination] and *Fortier v. Ameritech Mobile Communications, Inc.*, *supra*, 161 F.3d at pp. 1108, 1113 [affirmed summary judgment for employer where human resources vice-president stated four months before termination it was time for " 'new blood' " and a 26-year-old worker was a " 'quick study' "].) Also, while some courts have found it determinative that the remarks were not directly related to the employment decision, others have found that comments unrelated to the decision were relevant evidence of discriminatory animus. (Compare *Nesbit v. Pepsico, Inc.*, *supra*, 994 F.2d at p. 705 [affirmed summary judgment for employer where decision maker's remark " '[w]e don't want unpromotable fifty-year olds around' " not related directly or indirectly to employees' terminations] and *Nidds v. Schindler Elevator Corp.* (9th Cir. 1996) 113 F.3d 912, 918–919 [affirmed summary judgment for employer where decision maker's casual comment he intended to get rid of " 'old timers' " " 'not tied directly to' " employee's termination] with *Estes v. Dick Smith Ford, Inc.* (8th Cir. 1988) 856 F.2d 1097, 1104 [reversed jury verdict for employer and remanded for new trial where manager told racist jokes at staff meetings and referred to Blacks as " 'damn niggers' "] and *Ercegovich v. Goodyear Tire & Rubber Co.* (6th Cir. 1998) 154 F.3d 344, 356 ["management's consideration of an impermissible factor in one context may support the inference that the impermissible factor entered into the decision-making process in another context"].)

Finally, federal courts have treated identical remarks inconsistently. For instance, some courts have viewed decision makers' statements that older employees are not "promotable" as evidence of age discrimination, while others have refused to permit that inference from the same remark. (Compare *Cline v. Roadway Express, Inc.* (4th Cir. 1982) 689 F.2d 481, 488 [affirmed

district court's judgment against employer where decision maker fired employee because he was not "promotable" and replaced him with younger, potentially promotable person in accordance with his understanding of company policy] with *Coleman v. Quaker Oats Co.* (9th Cir. 2000) 232 F.3d 1271, 1282, 1284–1285 [affirmed summary judgment for employer, finding use of word "promotable" by itself did not give rise to inference of age discrimination] and *Nesbit v. Pepsico, Inc., supra,* 994 F.2d at p. 705 [affirmed summary judgment for employer where vice-president of personnel stated " '[w]e don't want unpromotable fifty-year olds around' "].

Some federal courts have found employers' statements about the need for "new blood" or "young blood" to be ageist remarks, while others have not. (Compare *Danzer v. Norden Systems, Inc., supra,* 151 F.3d at p. 53 [reversed summary judgment for employer where supervisor made comments including " '[w]e need new blood—new and younger' "] and *Meschino v. Internat. Telephone & Telegraph Corp.* (S.D.N.Y. 1983) 563 F.Supp. 1066, 1071 [denied summary judgment for employer where company's CEO announced that managers " 'had to bring [in] younger blood, younger executives, change the mix' "] with *Fortier v. Ameritech Mobile Communications, Inc., supra,* 161 F.3d at p. 1113 [affirmed summary judgment for employer even though plaintiff's direct supervisor said " 'new blood' would be good in [plaintiff's job] position"] and *Gagné v. Northwestern National Ins. Co.* (6th Cir. 1989) 881 F.2d 309, 314 [affirmed summary judgment for employer even though plaintiff's supervisor commented during a meeting he " 'needed younger blood' "].)

Similarly, federal courts have disagreed as to the ageist nature of references to "grey hair." (Compare *Palasota v. Haggar Clothing Co.* (5th Cir. 2003) 342 F.3d 569, 573, 578 [reversed district court's judgment as matter of law for employer where company president said there was enough " 'graying of the sales force' " and manager said " 'we've got an ageing, graying sales force out there' "] with *Sandstad v. CB Richard Ellis, Inc.* (5th Cir. 2002) 309 F.3d 893, 898 [affirmed summary judgment for employer even though senior manager responsible for employee's firing expressed concern over perception the company had " 'too much grey hair' " in management] and *Nesbit v. Pepsico, Inc., supra,* 994 F.2d at p. 705 [affirmed summary judgment for employer even though supervisor told plaintiff " '[w]e don't necessarily like grey hair' " because comment not directly tied to plaintiff's termination].) Courts have also disagreed as to the ageist nature of the term "old fart." (Compare *Minshall v. McGraw Hill Broadcasting Co., Inc.* (10th Cir. 2003) 323 F.3d 1273, 1281 [affirmed judgment after jury verdict for plaintiff where comments included company director's statement she was disgusted when "she saw 'an old fart' on television without a shirt"] and *Bevan v.*

*Honeywell, Inc.* (8th Cir. 1997) 118 F.3d 603, 607, 610 [affirmed judgment after jury verdict for plaintiff where human resources head stated placement of "old farts" in organization was difficult] with *Waggoner v. City of Garland, supra*, 987 F.2d at p. 1166 [affirmed summary judgment for employer even though director called plaintiff an "old fart" and told him a younger person could do faster work].)

As shown above, federal courts have widely divergent views regarding who constitutes a decision maker and how much separation must exist between the remark and an adverse employment decision for the remark to be considered stray. As Reid points out, the only consistency to the federal stray remarks cases is that the probative value of the challenged remark turns on the facts of each case. That was the approach taken by the Court of Appeal here. The court considered the so-called "stray remarks" by Hölzle, Rosing, and Reid's coworkers in combination with all of the evidence. Reid's other evidence included (1) an e-mail exchange between Google cofounder Brin and Rosing in which he told Rosing and other executives to "avoid the tendency towards bloat here particularly with highly paid individuals" and Rosing's response that he was replacing Reid as director of operations with the younger Hölzle, noting, "We are looking for a senior Director (note I did not capitalize Sr.) or VP level person to run this operation . . ."; (2) an e-mail exchange between CEO Schmidt and Rosing regarding a proposal on "getting [Reid] out," in which Rosing responded they should change the decision not to give Reid a bonus to avoid "a judge concluding we acted harshly . . ."; (3) explanations by Rosing and Shona Brown that Reid was terminated because he was not a "cultural fit"; (4) statistical evidence of discrimination at Google; (5) Reid's demotion to a nonviable position before his termination; and (6) changed rationales for Reid's termination.[13] Moreover, the court noted Reid presented evidence that Rosing and Hölzle supervised him and were involved in the termination decisions, thus calling into question whether Rosing's and Hölzle's alleged ageist comments even qualify as stray remarks.

█ Accordingly, in reviewing the trial court's grant of Google's summary judgment motion, the Court of Appeal properly considered evidence of alleged discriminatory comments made by decision makers and coworkers along with all other evidence in the record.[14]

---

[13] Reid presented evidence that he was not given any reason for his termination other than lack of "cultural fit," and was told the Graduate Degree Program would continue and his termination was not performance based. Reid asserts that Google raised job elimination and performance problems as a basis for his termination for the first time in its motion for summary judgment.

[14] Google argues that Reid's statistical evidence was inadmissible and the parties argue the merits of whether the Court of Appeal correctly concluded there was a triable issue of material fact as to pretext. However, those issues are beyond the scope of review.

## III.   DISPOSITION

For the reasons stated above, we affirm the judgment of the Court of Appeal.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Moreno, J., and Corrigan, J., concurred.