Filed 4/29/14  Fields v. The Goodyear Tire & Rubber Co. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DONALD FIELDS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>THE GOODYEAR TIRE & RUBBER COMPANY,<br><br>    Defendant and Respondent. | A136572<br><br>(San Francisco City and County Super. Ct. No. CGC-10-275697) |

Donald Fields sued a number of companies, including Goodyear Tire & Rubber Company (Goodyear), the sole respondent in this case, for damages related to asbestos exposure.  His negligence and strict liability claims against Goodyear relate to his alleged use of Goodyear's Wingfoot sheet gasket material during his work as a boilerman and boiler tender.

Goodyear moved for summary judgment, arguing that there was no evidence that Fields ever handled any asbestos-containing gasket material manufactured by Goodyear. In his depositions, Fields had been unable to identify a specific time that he had used Wingfoot gasket material before the late 1970's and Goodyear presented evidence that it produced no asbestos-containing gasket material after 1969.

Fields opposed Goodyear's motion and presented evidence that he had used Wingfoot sheet gasket material prior to 1969.  He also presented evidence that at least some Wingfoot sheet gasket material contained asbestos prior to 1969.  Nevertheless, the trial court granted Goodyear's motion for summary judgment on the ground that

1

Goodyear had satisfied its initial burden of production and that Fields had failed to present evidence creating a triable issue whether he was exposed to asbestos-containing products attributable to Goodyear.

On appeal, Fields contends that Goodyear did not meet its initial burden of production and that, even if it did meet that burden, he had produced evidence that established a triable issue of material fact. We agree and thus reverse the judgment of the trial court and the order granting Goodyear's motion for summary judgment.

## BACKGROUND

On November 9, 2010, Fields filed a complaint for damages related to asbestos exposure that he alleged occurred during his work as a mechanic (1955, 1992), service as a boilerman, welder, and boiler tender in the United States Navy (1955-1968), work as a welder in Virginia (1969-1974), work as a boiler tender in Virginia (1968-1975), and from automobile work he performed as a shade tree mechanic (prior to 1990). The complaint named multiple companies, which are not parties to this appeal, and Does 1-8500 as defendants. On April 1, 2011, Fields filed an amendment to his complaint substituting Goodyear for Doe No. 11. Fields alleged causes of action for negligence, strict liability, and false representation. He also asserted a claim for punitive damages.

Fields stated that he used sheet gasket material manufactured by Goodyear in his work as a boilerman and boiler tender. He would cut gaskets to size from the sheet gasket material and scrap pieces would fall to the floor, where they were eventually reduced to dust as workers walked over them. This dust would be swept up with brooms.

On February 3, 2012, Goodyear filed a motion for summary judgment or, in the alternative, summary adjudication. In its memorandum of points and authorities, Goodyear argued for summary adjudication on the negligence and strict liability causes of action on the ground that Fields had no proof that he was ever exposed to a product manufactured by Goodyear that contained asbestos.[1] Goodyear noted that in his

---

[1] Goodyear also argued for summary adjudication on the false representation cause of action and on the claim for punitive damages. However, in his opposition to Goodyear's motion, Fields stated that he had dismissed those claims against Goodyear.

depositions, Fields had no specific recollection of working with Goodyear's Wingfoot sheet gasket material before the late 1970's.[2] Goodyear argued that it did not manufacture or sell asbestos-containing gasket material after 1969.

As evidence that Goodyear did not manufacture or sell asbestos-containing gasket material after 1969, Goodyear submitted portions of the transcript of the deposition of Ernest DeMarse (DeMarse deposition), taken in Kentucky as part of an unrelated lawsuit. DeMarse was a former employee of Goodyear and stated that Goodyear ceased producing asbestos sheet gasket material in 1969. Goodyear also submitted DeMarse's declaration, prepared for an unrelated lawsuit in the state of Washington, in which DeMarse again stated that Goodyear ceased producing asbestos-containing sheet gasket material in 1969.

In his opposition to Goodyear's motion, Fields objected to the DeMarse deposition, arguing that Code of Civil Procedure section 2025.620 barred its use.[3] Fields also objected to the DeMarse declaration, arguing that it did not conform with California Rules of Court, rule 3.1115.

Fields also submitted his own declaration, in which he stated that he had worked with Goodyear Wingfoot sheet gasket material between 1955 and 1967. The Fields declaration included an exhibit that Fields described as a "Goodyear brochure for sheet packing (also commonly called 'sheet gasket')." The brochure describes a product named "Wingfoot Asbestos," illustrated by a depiction of a sheet of material imprinted with the words "Goodyear Wingfoot." Fields stated that "[t]he picture in the lower left-hand corner on this attachment is a fair representation of the logo for GOODYEAR WINGFOOT I saw on sheet gasket material I worked with during my time in the Navy."

Fields also submitted the declaration of Charlie Ay, who had been qualified to testify as an expert witness in state and federal courts on the identification, use,

---

**2** Goodyear also presented evidence concerning other brands of gasket material with which it might have been associated. However, in his opposition to Goodyear's motion, Fields disputed only Goodyear's arguments concerning Wingfoot gasket material.

**3** Unless otherwise noted, further statutory references are to the Code of Civil Procedure.

3

installation and removal of asbestos-containing products. Ay's opinion was that because Fields had described using Wingfoot gasket material in high temperature and high pressure applications before 1970, it was more likely than not that the gasket material contained asbestos.

In reply to Fields's opposition, Goodyear objected to the Fields declaration on the ground that it contradicted Fields's deposition testimony and discovery responses. Goodyear also argued that even if Fields's declaration were considered, "there is no evidence that any Goodyear 'Wingfoot' gasket he may have used prior to 1969 contained asbestos."

On April 18, 2012, the court held a hearing on Goodyear's motion. At the start of the hearing, the court sustained Fields's objection to the DeMarse declaration, stating: "When it comes to [DeMarse's] declaration, I have some problems with it in terms of the caption [as required by California Rules of Court, rule 3.1115,] as well as [Code of Civil Procedure section] 2015.5, which was raised by plaintiff, needless to say. So for all intents and purposes, I didn't even consider it."[4] The court also overruled Goodyear's objection to the Fields declaration: "I think that your client identified the product, and I know that there is some dispute about it in his deposition, when he had some difficulty making some identifications of Goodyear Wing Foot. But I think that he went on to explain it. So I'm not having a problem there."

The court stated that it believed "that the defendant did shift the burden" and continued: "And let me tell you where the court is focused on. I don't—the issue is: Can you, plaintiff, prove that the product 'Wing Foot,' that was involved in this case, contained asbestos? And I will be honest with you, I have a problem with that. And

---

**4** Goodyear maintains that "[t]he trial court overruled all of [Fields's] objections" and cites the court's order granting Goodyear's motion for summary judgment. The order makes no reference to Fields's objections. The trial court made it quite clear during the hearing on Goodyear's motion that it sustained Fields's objection to the DeMarse declaration. The court did not address Fields's objection to the DeMarse deposition either at the hearing or in its order, so we presume that it was overruled. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.)

4

that['s] my tentative—or I'm leaning, after reading this again last night, is to grant the [motion for summary judgment]."

Following argument by the parties, the court took the motion for summary judgment under submission. On April 26, 2012, the court filed an order granting Goodyear's motion, stating: "Defendant sustained its initial burden of production. Plaintiff failed to present evidence creating a triable issue whether he was exposed to asbestos-containing products or materials attributable to defendant. Defendant's objections to plaintiff's declaration are overruled, and defendant's objections to Ay's declaration are sustained." On July 9, 2012, the court entered judgment in favor of Goodyear.

Fields filed a timely notice of appeal on September 17, 2012.

## DISCUSSION

Fields contends that the trial court erred in granting Goodyear's motion for summary judgment because whether he used Goodyear Wingfoot sheet gasket material prior to 1969 and, if so, whether it more likely than not contained asbestos were triable issues of material fact. He also contends that the court erred in sustaining Goodyear's objection to the Ay declaration.[5]

### I. *Legal Standard*

We review a grant of summary judgment de novo and "we must ' "view the evidence in the light most favorable to plaintiff[] as the losing part[y]" and "liberally construe plaintiff['s] evidentiary submissions and strictly scrutinize defendant['s] own evidence, in order to resolve any evidentiary doubts or ambiguities in plaintiff['s] favor." ' " (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 253-254.)

"First, and generally, from commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. That is because of the general principle that a party who seeks a court's action in his favor bears the burden of

_____

[5] Because we reverse on other grounds, we need not discuss that ruling further.

persuasion thereon.  (See Evid. Code, § 500.)  There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.  [Citation.] . . .  [A] plaintiff bears the burden of persuasion that 'each element of' the 'cause of action' in question has been 'proved,' and hence that 'there is no defense' thereto.  [Citation.]  A defendant bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto.  [Citation.]

"Second, and generally, the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . .  A prima facie showing is one that is sufficient to support the position of the party in question." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850-851, fns. omitted; see also § 437c, subd. (p).)

## II.  *Goodyear Failed to Shift the Burden of Production to Fields*

Goodyear produced evidence (in the DeMarse deposition) that after 1969 it manufactured no sheet gasket material that contained asbestos.  This constituted a prima facie showing that Fields would not be able to prove exposure to asbestos containing sheet gasket material produced by Goodyear after 1969.  However, Goodyear acknowledged producing asbestos containing gasket material, as well as non-asbestos containing gasket material, for some 50 years ending in 1969.

At his deposition on June 9, 2011, more than six months before Goodyear's motion was filed, Fields testified in part as follows:

"Q.  Okay.  Sir, did you ever see any Goodyear Wingfoot gaskets throughout your career?

"A.  I don't recall at this time.

6

"Q.  Would you be able to identify any specific ship or job site where you ever worked with any Goodyear Gaskets?

"A.  The only way I could tell you—answer that question is *throughout my career we've used that gasket material.*[6]  [¶] . . . [¶]

"Q.  At this time, you would not be able to identify any specific ship or job site where you worked with any Goodyear Wingfoot gaskets; is that correct?  [¶]

"[A.]  I've used it in my career.  And to pinpoint a specific place or a valve or a pump, I don't recall at this time."

While Fields's testimony about using Goodyear Wingfoot gaskets is not specific as to the time frame before 1969, what DeMarse's deposition testimony evidences is that Goodyear did not make asbestos containing Wingfoot gasket material after 1969.  Since the complaint in this action alleges contact with the products of defendants, including Goodyear's products, before and after 1969, Goodyear's failure to introduce evidence showing that Fields was not, or could not have been in contact with asbestos-containing Wingfoot material before 1969 leaves open the possibility that he was.  Hence, by not negating contact with Goodyear's asbestos containing Wingfoot gasket material at all relevant times, Goodyear failed to satisfy its initial burden of production.  By itself, that is a reason to reverse the judgment.

**III.  *Fields Established the Existence of a Triable Issue of Fact***

Even if Goodyear had satisfied its initial burden, Fields's declaration includes evidence that he had been exposed to asbestos-containing Goodyear Wingfoot sheet gasket material.  He identified the logo "Goodyear Wingfoot" as "a fair representation of the logo for GOODYEAR WINGFOOT I saw on sheet gasket material aboard ships on feed pumps which fed into boilers, and fuel oil lines."

The essence of Goodyear's argument in the trial court and here is that even though Fields presented evidence that he used Wingfoot sheet gasket material before 1969 and

---

[6]  Goodyear counsel moved to strike this answer at the deposition, but did not seek a ruling on that motion during the summary judgment proceeding.  Hence, all of Fields's testimony in this regard was properly before the trial court.  (§ 437c, subd. (c).)

that at least some Wingfoot material contained asbestos, Fields did not present evidence that the Wingfoot material he used more likely than not contained asbestos because "[t]he undisputed evidence was that pre-1969, some of Goodyear's sheet gasket material contained asbestos and some did not." Goodyear contends that Fields has raised only a mere possibility that he was exposed to asbestos-containing Wingfoot sheet gasket material and that such a showing is insufficient to create a triable issue of fact. The problem with Goodyear's argument is that Goodyear's undisputed fact and the evidence it relies upon does not address whether, prior to 1969, it distributed non-asbestos gasket material under the Wingfoot logo.

The undisputed fact states only: "Until 1969, Goodyear manufactured and sold some sheet gasket material that contained asbestos; during that same time period, Goodyear manufactured and sold non-asbestos-containing sheet gasket material." Goodyear cited the DeMarse declaration and the DeMarse deposition in support of this purported fact. However, the trial court sustained Fields's objection to the DeMarse declaration, so we may not consider its content. We have examined the DeMarse deposition and find no reference to Wingfoot gasket material. Indeed, the excerpts provided support the proposition that Goodyear stopped using asbestos in gasket material in 1969, but not that it had sold non-asbestos containing gasket material, much less under the Wingfoot logo, prior to that time.

Because the admissible evidence produced by Goodyear in support of its motion for summary judgment did not speak to the asbestos content of Wingfoot sheet gasket material prior to 1969, there is plainly a triable issue of fact as to whether Fields was exposed to such material prior to 1969.

Finally, we are compelled to point out that the question on a motion for summary judgment is not whether, at trial, plaintiff will be able to carry his burden of proving that it is more likely than not he was exposed to Goodyear's asbestos products. Rather, the question is, assuming Goodyear had met its burden of coming forward with evidence negating such contact, whether plaintiff's opposing evidence created a triable issue on the highly material fact of contact with defendant's product. The likelihood of plaintiff

8

satisfying his trial burden plays no role in determining whether a motion for summary judgment should be granted or denied.

## DISPOSITION

We reverse the judgment entered in favor of Goodyear and the court's order granting Goodyear's motion for summary judgment.

                           _____

                           Brick, J.*

We concur:

_____

Kline, P.J.

_____

Richman, J.

* Judge of the Alameda County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.