Filed 5/21/15  Munoz v. Deutsche Bank National TrustCA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RAUL MUNOZ,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY, as Trustee, etc., et al.,<br><br>    Defendants and Respondents. | G049133<br><br>(Super. Ct. No. 30-2012-00597286)<br><br> O P I N I O N |

        Appeal from a judgment and an order of the Superior Court of Orange County, Derek W. Hunt, Judge.  Affirmed.

        Raul Munoz , in pro. per., for Plaintiff and Appellant.

        Chuck Birkett Tsoong, Stephen S. Chuck, Tiffany M. Birkett and Victoria J. Tsoong for Defendants and Respondents.

                        *        *        *

Plaintiff and appellant Raul Munoz[1] lost a triplex in foreclosure. He tried to block the foreclosure by asserting, inter alia, that the documentation in connection with the securitization, pooling, and assignment of his loan was fraudulent. On appeal, he maintains that the documentation was improper. Furthermore, for a variety of reasons, he asserts that the court erred in sustaining the defendant financial institutions' demurrers to five of his causes of action and in granting their motion for summary judgment as to his remaining two causes of action. The court did not err. We affirm.

I

FACTS

A. *Appellant's Allegations and Request for Judicial Notice:*

The following allegations are taken from appellant's first amended complaint. The document descriptions, where indicated, are taken from the documents attached to appellant's request for judicial notice, filed in the trial court.

On or about June 8, 2007, appellant signed a promissory note and deed of trust in favor of Home Loan Funding, Inc., and Mortgage Electronic Registration Systems, Inc. (MERS) was designated as both the "nominee" and the beneficiary of the deed of trust. A copy of the deed of trust dated June 7, 2007, securing a promissory note in the amount of $602,400, was attached to appellant's request for judicial notice. It identified Home Loan Funding, Inc. as the lender, MERS as both the lender's nominee and the beneficiary, and Fidelity National Title Company as the trustee.

According to appellant, around the time he got the loan, Home Loan Funding, Inc. "attempted to securitize and sell his loan to another entity[,]" but "[t]hat entity was not Deutsche Bank . . . ." (Boldface and italics omitted.)

---

[1] The pleadings, judgment, and loan documentation at issue in this case refer to appellant as Raul Munoz. However, appellant filed his notice of appeal and briefing on appeal under the name Raul Munoz Ulloa.

2

In July 2008, IndyMac Bank was closed by the Office of Thrift Supervision. Its assets were transferred to IndyMac Federal Bank.

On February 18, 2009, Roger Stotts, vice-president of MERS signed an assignment of the deed of trust and the underlying note. Appellant made reference to an assignment of deed of trust attached to his request for judicial notice. That assignment of deed of trust was signed by Stotts on behalf of MERS as nominee for Home Loan Funding, Inc. It stated that MERS as nominee for Home Loan Funding, Inc. assigned both its beneficial interest under the deed of trust, and the underlying note, to IndyMac Federal Bank. The assignment of deed of trust was recorded on March 6, 2009. Appellant disputed both the authenticity and the contents of the assignment.

Appellant also made reference to a substitution of trustee, of which he also sought judicial notice. That substitution of trustee was dated February 19, 2009, and signed by Christina Allen, vice-president of IndyMac Federal Bank. The substitution of trustee recited that IndyMac Federal Bank was the current beneficiary under the deed of trust, and substituted NDEx West, LLC as trustee under the deed of trust. The substitution of trustee was recorded on February 26, 2009. Appellant alleged that Allen was not a vice-president of IndyMac Federal Bank and the document was fraudulent.

In February 2009, appellant "initiated loan modification negotiation efforts with Onewest, [his] subsequent servicer." In March 2009, the Federal Deposit Insurance Corporation (FDIC) sold IndyMac Federal Bank to OneWest Bank. OneWest Bank acquired the right to service the mortgages "previously serviced by IndyMac, including . . . the loan at issue in this matter."

Erica A. Johnson-Seck executed an assignment of deed of trust on behalf of IndyMac Federal Bank. In support of this assertion, appellant made reference to the copy of the assignment of deed of trust attached to his request for judicial notice. That copy showed that, on September 15, 2009, Johnson-Seck, as attorney-in-fact for IndyMac Federal Bank, assigned all beneficial interest under appellant's deed of trust to Deutsche

3

Bank National Trust Company, as trustee of the IndyMac Indx Mortgage Trust 2007-AR19, Mortgage Pass-through Certificates, Series 2007-AR19 under the Pooling and Servicing Agreement dated July 1, 2007. Appellant alleged that Johnson-Seck was not the attorney-in-fact for IndyMac Federal Bank, so the assignment was fraudulent.

Eventually, appellant and OneWest Bank entered into a custom loan modification in December 2010. The modification agreement was recorded on January 18, 2011.

On August 23, 2011, a notice of default was recorded with respect to appellant's loan. In describing appellant's June 7, 2007 deed of trust securing the loan, the notice recited that NDEx West, LLC was the original trustee, substituted trustee, or agent for the trustee and that MERS was the beneficiary. It did not recite any subsequent history concerning the deed of trust. The notice advised appellant to contact OneWest Bank in care of NDEx West, LLC to arrange for payment to stop foreclosure.

After receiving the notice of default, appellant sent a series of letters addressed to NDEx West, LLC, IndyMac, and Deutsche Bank. He sent a couple of the letters to MERS also. Although OneWest Bank responded to one of the letters by promising to research appellant's matter, appellant received no subsequent information from OneWest Bank. He received no response at all to most of his letters.

Appellant's property was lost through foreclosure on October 18, 2012. The trustee's deed stated that NDEx West, LLC, as trustee, conveyed the property to Deutsche Bank National Trust Company, as trustee of the IndyMac Indx Mortgage Trust 2007-AR19, Mortgage Pass-through Certificates, Series 2007-AR19 under the Pooling and Servicing Agreement dated July 1, 2007.

B. *Procedural History:*

Appellant, in propria persona, filed a first amended complaint against several defendants, including: (1) Deutsche Bank National Trust Company as trustee of

4

the IndyMac Indx Mortgage Trust 2007-AR19 Mortgage Pass-Through Certificates, Series 2007-AR19, under the Pooling and Servicing Agreement dated July 1, 2007 (Deutsche Bank); (2) IndyMac Mortgage Services, a division of OneWest Bank, FSB (OneWest Bank); and (3) MERS, (collectively, respondents).[2] The first amended complaint was based on the purportedly wrongful sale, by foreclosure, of his triplex in Santa Ana, California.

It asserted causes of action for (1) declaratory relief, (2) negligence, (3) quasi-contract, (4) violation of 12 United States Code section 2605, (5) 15 United States Code section 1692 et seq., (6) violation of Business & Professions Code section 17200 et seq., and (7) accounting. It sought in excess of $5 million in damages.

Deutsche Bank, OneWest Bank[3] and MERS filed a demurrer to the entirety of the first amended complaint. The court sustained all demurrers by defendant MERS. It overruled the other defendants' demurrers to the third and seventh causes of action. In addition, it sustained without leave to amend the other defendants' demurrers to the first and second causes of action. Finally, it sustained with leave to amend their demurrers to the fourth, fifth and sixth causes of action. Appellant did not file a second amended complaint to amend the fourth, fifth and sixth causes of action.

Deutsche Bank, OneWest Bank and MERS thereafter filed a motion for summary judgment. The court granted the motion and entered summary judgment. Appellant filed a notice of appeal from the summary judgment.

---

[2]     The lawsuit was dismissed without prejudice as against a fourth defendant, NDEx West, LLC, due to lack of service of process.

[3]     Respondents, including OneWest Bank, filed an answer to the first amended complaint in which they stated OneWest Bank had been erroneously sued as its division, IndyMac Mortgage Services.

II

DISCUSSION

A.  *Scope of Appeal:*

Respondents claim the ruling on the demurrer is not before us on appeal. They explain that appellant did not file an appeal with respect to that ruling and they say it is too late for him to do so now.  Consequently, they conclude appellant's appeal is untimely as to that ruling.  They are in error.  "An order sustaining a demurrer is interlocutory and not appealable.  [Citation.]  The appeal must be taken from a subsequent judgment of dismissal.  [Citation.]"  (*Conley v. Roman Catholic Archbishop* (2000) 85 Cal.App.4th 1126, 1130.)  Appellant had no opportunity to challenge the ruling on the demurrer until the judgment of dismissal was entered and his challenge is not untimely.

Respondents also fault appellant for his failure to mention the ruling on the demurrer in his notice of appeal.  However, Code of Civil Procedure section 906 provides that "the reviewing court may review the verdict or decision and any intermediate ruling, proceeding, order or decision which involves the merits or necessarily affects the judgment or order appealed from or which substantially affects the rights of a party . . . ."  (See also *George Ball Pacific, Inc. v. Coldwell Banker & Co.* (1981) 117 Cal.App.3d 248, 253, fn. 4.)  That being the case, we will review the ruling on the demurrer in the matter before us.

B.  *Demurrer:*

*(1)  Standard of review—*

"We independently review the ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action.  [Citation.]  We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been

6

taken.  [Citation.]  We construe the pleading in a reasonable manner and read the allegations in context.  [Citation.]  We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons.  [Citation.]" (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 111.)

"If we conclude the complaint fails on any grounds stated in the demurrer, we must then consider whether there is a '"reasonable possibility"' the complaint's defect(s) can be cured by an amendment.  [Citation.]"  (*Jenkins v. JPMorgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 506.)  "The burden of proving the reasonable possibility of such a curative amendment falls ""'squarely on the plaintiff.'  [Citations.]" [Citations.]'  [Citation.]"  (*Id*. at p. 507.)

*(2)  Merits—*

Appellant cites *Ramirez v. USAA Casualty Ins. Co.* (1991) 234 Cal.App.3d 391 at page 397, which provides:  "A general demurrer admits the truth of all material facts alleged in the complaint."  He says that respondents have, therefore, admitted all the alleged facts and the only question is whether the alleged facts support a claim.  He contends that they do.

*(a)  Declaratory relief*

With respect to his first cause of action, appellant says he seeks "Declaratory Relief as to whether the Deed of Trust (Mortgage) secures any obligation of [his] in favor of Deutsche Bank, MERS, and Onewest, such that either of them can collect [his] mortgage payments, demand payment or have Ndex engage in debt collection activities."  Declaratory relief is not available in this context.

In his first amended complaint, appellant alleged that his property was lost through foreclosure.  Indeed, he attached a copy of the trustee's deed upon sale as exhibit H.  Appellant has not explained why, considering the lien of his deed of trust has been foreclosed, there is any remaining question as to whether the deed of trust provides continuing security.

Moreover, as respondents noted in their demurrer, the court generally does not provide declaratory relief with respect to past acts, where no future conduct between the parties is at issue. (*Cardellini v. Casey* (1986) 181 Cal.App.3d 389, 397-398.) Appellant now cites an unpublished federal court decision in *Schafer v. CitiMortgage, Inc.* (C.D. Cal., June 15, 2011, No. 11-03919) 2011 U.S. Dist. Lexis 64558. If we consider this unpublished decision as persuasive authority (*Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149, 1155, fn. 6), we observe that it had to do with a motion to dismiss under Federal Rules of Civil Procedure, rule 12(b)(6), and in particular with the application of the federal Declaratory Judgment Act (28 U.S.C. § 2201(a)). An analysis of whether a federal court should dismiss a declaratory relief cause of action under the Declaratory Judgment Act is not germane to the analysis of whether it was proper to sustain a demurrer as to a declaratory relief cause of action under California law. Appellant has not shown that his declaratory relief cause of action could be amended so as to state a viable cause of action under California law. (*Cardellini v. Casey*, *supra*, 181 Cal.App.3d at pp. 397-398.)

### *(b)  Negligence*

The negligence cause of action contains allegations that appear to be taken from a stock complaint. It alleges, inter alia, that respondents "breached [their] duty by colluding to lure Plaintiffs into [a] predatory loan that [respondents] knew or should have known Plaintiff would default on[,]" and that he had suffered harm, including having been "forced to borrow excessive amounts of money, having the equity stripped from their home and, now, facing foreclosure." Yet appellant premised his action on the allegation that he did not borrow from any of respondents, inasmuch as they were "third-party strangers" to his loan, and that his property had already been lost through foreclosure.

In any event, in their demurrer, respondents noted that a negligence cause of action must be based on a duty. They cited *Nymark v. Heart Fed. Savings & Loan*

*Assn.* (1991) 231 Cal.App.3d 1089 at page 1096, wherein the court stated that "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."

Appellant now acknowledges that this is a correct statement of law. However, he emphasizes that a financial institution may owe a duty of care to a borrower when its involvement *does* exceed the scope of its conventional role as a mere lender of money. He cites *Ansanelli v. JP Morgan Chase Bank, N.A.* (N.D. Cal., Mar. 28, 2011, No. C10-03892) 2011 U.S. Dist. Lexis 32350, another unpublished decision, wherein the court held that the plaintiffs had sufficiently alleged a duty of care where the lender had offered the borrowers a trial loan modification plan, with a guarantee that if they made the modified payments on time for three months they would receive a permanent loan modification, but the lender reneged on the deal even after the borrowers had fulfilled their part of the bargain. The court concluded that the defendants had adequately alleged that the lender's involvement in the loan transaction had indeed exceeded "'the scope of its conventional role as a mere lender of money. . . .'" (*Id.* at p. *21.) We observe that this case has been criticized in several others. (See, e.g., *Casault v. Fannie Mae* (C.D. Cal. 2012) 915 F.Supp.2d 1113; *Bunce v. Ocwen Loan Servicing, LLC* (E.D. Cal., July 17, 2013, No. CIV 2:13-00976) 2013 U.S. Dist. Lexis 100111.) Anyway, the case before us is distinguishable.

Appellant says his first amended complaint shows he "initiated loan modification negotiation efforts with Onewest" and that his applications "for several loan modifications . . . were all . . . denied without further explanation . . . ." However, this is not what his first amended complaint says. Rather, in his first amended complaint appellant alleged that he sought a loan modification from OneWest Bank in February 2009, and eventually obtained one, in December 2010. He further alleged that the modification agreement was recorded on January 18, 2011. A copy of the recorded

9

modification agreement was attached as exhibit A to his first amended complaint. So, in his first amended complaint, appellant alleged that he sought and obtained a loan modification. We see nothing here to show that the lender acted other than in "its conventional role as a mere lender of money." (*Nymark v. Heart Fed. Savings & Loan Assn.*, *supra*, 231 Cal.App.3d at p. 1096.)

### (c) Statutory violations

### (i) correspondence

Next, appellant lumps most of his remaining causes of action together, and says respondents could not properly foreclose because they fabricated an assignment of deed of trust and falsely represented to him and the court that they had the right to take his property away. He contends respondents committed a number of statutory violations and he bases his arguments on a series of letters he sent after receiving OneWest Bank's August 23, 2011 notice of default.

On September 11, 2011, appellant sent a "VALIDATION OF DEBT NOTICE" to NDEx West, LLC, IndyMac Mortgage Services, and Deutsche Bank National Trust Company. He asked for: (1) information concerning the nature of the debt; (2) an explanation of the manner in which they calculated the money owing; (3) certified copies of documents showing that he agreed to pay the asserted monies owing; (4) a copy of any applicable judgment; (5) the identity of the original creditor and the name and address of the current owner of the loan; (6) proof that the statute of limitations had not expired; (7) proof that they were licensed to collect in the state; and (8) their license numbers and registered agent. Remarkably, the letter declared: "If you do not answer within a reasonable amount of time, you accept this offer of full satisfaction of said loan concerning the deed of trust . . . and its note, and an officer will be appointed to record a reconveyance on your behalf."

On October 28, 2011, appellant sent a further inquiry entitled "QUALIFIED WRITTEN REQUEST, COMPLAINT, DISPUTE OF DEBT &

VALIDATION OF DEBT LETTER, FOIA REQUEST, SIGNATURE REVOCATION, and AFFIDAVIT." (Underscoring omitted.) That letter contained a barrage of requests for information. Among other things, appellant demanded the receipt of documents identified in 22 different categories, and posed 20 generic questions on late fees, four general questions on debit and credit information, and three broad questions about accounting and servicing systems. He asked, for example, for respondents to identify each "accounting and servicing system used by [them] and any sub-servicers or previous servicers from the inception of this account to the present date . . ." and to "provide the name and address of the company or party that designed and sold the system."

In addition, in his "QUALIFIED WRITTEN REQUEST," appellant purported to unilaterally impose upon respondents the granting by them of an unlimited power of attorney in him to endorse their names "upon any instrument in satisfaction of the obligation(s) of this REQUEST/AGREEMENT or any agreement arising from this agreement." Furthermore, it advised respondents: "If you fail to satisfy the demand within the allotted time after having been duly served with this Qualified Written Request, then by Tacit Procuration [Appellant] . . . will determine for you and each of you, [that you] concur and are satisfied with the justness of the demand . . . ." Finally, by his "QUALIFIED WRITTEN REQUEST," appellant purported to "revoke and withdraw any and all power and authority in the matter of [respondents]" with respect to his loan and to revoke their status as trustees or beneficiaries.

On March 23, 2012, appellant sent another "VALIDATION OF DEBT NOTICE," substantially similar to his letter of September 11, 2011. Finally, on June 5, 2012, appellant sent a "DEMAND TO CEASE AND DESIST ACTIVITIES OF PURPORTED DEBT." (Underscoring omitted.) In that demand letter, appellant recited, inter alia, that he had received no response to his prior three letters, that respondents had failed to validate the debt, and that the foreclosure proceedings were unlawful.

11

A trustee's deed upon sale was recorded on October 18, 2012.

*(ii) 12 U.S.C. § 2605(e) (RESPA)*

In his first amended complaint, appellant asserted that OneWest Bank failed to comply with 12 United States Code section 2605(e) by timely responding to his correspondence. In a garbled allegation, appellant asserted: "Onewest failed to comply because On November 29, 2011 one month after Onewest responded to [his] request but informed [him] that Onewest would research the inquiry concerning the mortgage loan." He continued on: "However, Onewest has not sent any response to plaintiff's qualified written request and Plaintiffs inquiries are still unanswered."

In the demurrer, respondents asserted that appellant's correspondence did not constitute a "qualified written request," within the meaning of 12 United States Code section 2605(e)(1)(A), to which they were required to respond. They further asserted that even if they were required to respond, appellant had not stated a viable claim under 12 United States Code section 2605(e) because he had failed to allege actual harm.

Title 12 United States Code section 2605(e)(1)(A) provides: "If any servicer of a . . . mortgage loan receives a qualified written request from the borrower . . . for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 5 days . . . ." Title 12 United States Code section 2605(e)(1)(B) defines "a qualified written request" as "a written correspondence . . . that— . . . (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."

Here, appellant did not state that he believed his account was in error. Rather, he demanded that respondents prove they owned his promissory note. In addition, he sought information about such things as accounting systems and requested copies of a myriad of documents, including those pertaining to the securitization and pooling of his loan, the transfers of his loan, and the servicing of his loan. We question

12

whether his seemingly endless and most assuredly burdensome request for information fell within the spirit of 12 United States Code section 2605(e)(1)(A). Nonetheless, while it is a close call, we do not conclude that appellant failed to provide "sufficient detail to the servicer regarding other information sought by the borrower." (12 U.S.C. § 2605(e)(1)(B).) That is not the end of our inquiry, however.

Title 12 United States Code section 2605(f) states, "Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts: [¶] . . . [¶] In the case of any action by an individual, an amount equal to the sum of— [¶] (A) any actual damages to the borrower as a result of the failure . . . ."

"Asserting a defendant's failure to respond to a [qualified written request] and the suffering of general damages is insufficient to state a claim under RESPA. [Citation.] Instead, federal courts have read 12 United States Code section 2605 as requiring a plaintiff to plead specific facts showing both the defendant's failure to respond and the plaintiff's suffering of 'pecuniary damages' in order to avoid the dismissal of his or her RESPA claim. [Citations.] In effect, this pleading requirement has limited RESPA claims to circumstances in which a plaintiff can allege specific facts to show causation—'"actual damages to the borrower as a result of the failure [to comply with RESPA requirements]."' [Citation.]" (*Jenkins v. JPMorgan Chase Bank, N.A.*, *supra*, 216 Cal.App.4th at pp. 531-532.)

In his first amended complaint, appellant stated he had "suffered actual damages, including but not limited to devastation of their credit, monetary damages, and threatened foreclosure of their home" and that he had "been damaged in an amount to be proven at trial." However, he did not explain how the failure to provide a timely response to his request for documents, such as copies of the documents pertaining to loan securitization, pooling, transfer, and servicing, had caused a devastation of his credit, monetary damages or foreclosure (either threatened or completed). "Federal district

13

courts have found sufficiently pled actual damages include the assertion of concrete harms cause by the RESPA violation itself, not harms generally resulting from a plaintiff's default and the foreclosure of his or her home." (*Jenkins v. JPMorgan Chase Bank, N.A.*, *supra*, 216 Cal.App.4th at p. 532.)

### (iii) 15 U.S.C. § 1692e

Appellant's fifth cause of action was for violation of 15 United States Code section 1692, et seq. Although appellant did not cite a particular statute, he quoted snippets of language clearly taken from 15 United States Code section 1692e.

That statute provides in pertinent part that, "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: [¶] . . . [¶] (2) The false representation of--[¶] (A) the character, amount, or legal status of any debt . . . . [¶] . . . [¶] (5) The threat to take any action that cannot legally be taken . . . ." (15 U.S.C. § 1692e.)

Appellant alleged each of the respondents had committed fraud as prohibited by federal law by misrepresenting that the debt was due and owing to Deutsche Bank as an innocent purchaser for value when the debt had not been validly assigned to Deutsche Bank. In their demurrer, respondents asserted that the cause of action, which they characterized as one for fraud, failed for lack of specificity. They argued appellant was required to specify "the 'who, what, when, were, and how of the fraud.' [Citation.]" They emphasized that where there are multiple defendants, the plaintiff was required to describe for each defendant the nature of his participation in the fraud.

We agree. Appellant's bare allegations that each of the respondents falsely represented that the debt was owing to Deutsche Bank, as an innocent purchaser for value, that they threatened to engage in legally impermissible collection activities, and that they tried to collect on the debt through the false pretense of claiming Deutsche Bank

14

was an assignee, "are too conclusory, vague and confusing to give each 'defendant fair notice of what the . . . claim is and the grounds upon which it rests.' [Citation.]" (*Burnett v. Mortgage Electronic Registration* (10th Cir. 2013) 706 F.3d 1231, 1240.) Appellant has simply offered "vague alleged acts . . . with zero details or concrete examples. [Citation.]" (*Ibid.*) In other words, from the first amended complaint, "we cannot tell *which* defendant is alleged to have done what, nor can we tell *what* the misconduct was. [Citation.]" (*Ibid.*) That is to say, we do not know if the respondents were alleged to have made their misrepresentations via letters, faxes, e-mails, telephonic communication, or some other method. We also do not know what persons were alleged to have made misrepresentations on behalf of which of the respondents, and when.

*(iv) Business & Professions Code § 17200*

In his sixth cause of action, appellant asserted that respondents had violated Business & Professions Code section 17200 et seq., which is commonly known as the "unfair competition law." (*Jenkins v. JPMorgan Chase Bank, N.A.*, *supra*, 216 Cal.App.4th at p. 520.) The unfair competition law "'""borrows' violations of other laws and treats them as unlawful practices" that the unfair competition law makes independently actionable. [Citation.]' [Citation.]" (*Ibid.*) Appellant alleged that respondents had violated a number of state and federal statutes and, therefore, had also violated of the unfair competition law.

Appellant described the unlawful conduct as: (1) "executing and recording false and misleading documents; [fn. omitted]" (2) "executing and recording documents without the legal authority to do so;" (3) "failing to disclose the principal for which documents were being executed and recorded . . . ;" (4) "demanding and accepting payments for debts that were non-existent;" (5) "violating the Security First Rule;" (6) reporting payments as late to credit bureaus without the legal right or authority to do so;" (7) acting as a beneficiary without the legal authority to do so, and;" (8) "other deceptive business practices . . . ."

15

In their demurrer, respondents argued that appellant's allegations were insufficient to establish a viable claim under the unfair competition law for several reasons. Notably, they asserted that appellant had failed to allege causation.

To bring a claim under the unfair competition law, a plaintiff must "'(1) establish a loss or deprivation of money or property sufficient to qualify as an injury in fact, i.e., *economic injury*, and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice . . . that is the gravamen of the claim.' [Citation.]" (*Jenkins v. JPMorgan Chase Bank, N.A.*, *supra*, 216 Cal.App.4th at p. 521.) We are concerned here with the second requirement. Where a plaintiff defaults on his or her loan and then loses his or her property through foreclosure, the loss of the property is caused by the plaintiff's default, not the defendant's allegedly wrongful actions. In that case, the plaintiff "cannot show any of the alleged violations have a causal link to [the] economic injury" and the sustaining of a demurrer to the unfair competition law cause of action is proper. (*Id.* at p. 523.)

### C. Summary Judgment:

#### (1) Standard of review—

"'Under summary judgment law, any party to an action, whether plaintiff or defendant, "may move" the court "for summary judgment" in his [or her] favor on a cause of action . . . or defense (Code Civ. Proc., § 437c, subd. (a))—a plaintiff "contend[ing] . . . that there is no defense to the action," a defendant "contend[ing] that the action has no merit" (*ibid.*). The court must "grant[]" the "motion" "if all the papers submitted show" that "there is no triable issue as to any material fact" (*id.*, § 437c, subd. (c))—that is, there is no issue requiring a trial as to any fact that is necessary under the pleadings and, ultimately, the law [citations]—and that the "moving party is entitled to a judgment as a matter of law" (Code Civ. Proc., § 437c, subd. (c)).' [Citation.]" (*Willemsen v. Mitrosilis* (2014) 230 Cal.App.4th 622, 626.)

16

"'[I]n moving for summary judgment, a "defendant . . . has met" his [or her] "burden of showing that a cause of action has no merit if" he [or she] "has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action.  Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto. . . ."  (Code Civ. Proc., § 437c, subd. [(p)(2)].)'  [Citation.]"  (*Willemsen v. Mitrosilis, supra,* 230 Cal.App.4th at p. 626, fn. omitted.)  "The plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto."  (Code Civ. Proc., § 437c, subd. (p)(2).)

"On review of a summary judgment, we 'examine the record de novo and independently determine whether [the] decision is correct.  [Citation.]'  [Citation.]"  (*Willemsen v. Mitrosilis*, *supra*, 230 Cal.App.4th at p. 626.)

*(2)  Merits—*

*(a) allegations supporting remaining causes of action*

After the demurrers were sustained, the only causes of action remaining were the causes of action for quasi-contract and an accounting.  In his cause of action for quasi-contract, appellant asserted:  "Deutsche, MERS, and Onewest knowingly accepted payments and retained them for [their] own use knowing that [they] did not acquire an interest in Plaintiffs Note, such that they could accept or keep Plaintiffs payments.  It would be inequitable for Deutsche, MERS, and Onewest to retain the payments [they] received from Plaintiff which [they] did not have legal authority to collect."  Similarly, in his cause of action for an accounting, appellant asserted that he had made his mortgage payments to Deutsche Bank, OneWest Bank, and MERS for about two years, but that they were not actually entitled to any of that money because they never had an interest in

17

his loan. So, he argued, they were required to return the money to him and they owed him an accounting to show the amount of money to be returned.

*(b) motion for summary judgment*

In their motion for summary judgment, respondents asserted, inter alia, that through various assignments of appellant's note and deed of trust, as well as the right to service the same, they had acquired all the rights to collect the monies owing under the note and deed of trust and to foreclose. In support of their motion, respondents filed an index of exhibits. The exhibits consisted of copies of documents intended to show the rights of respondents to collect the monies owing under appellant's note and deed of trust and to foreclose. They included copies of eight recorded documents appellant himself already had provided to the court, either as attachments to his request for judicial notice or as exhibits to his first amended complaint: (1) the deed of trust securing appellant's note; (2) the assignment of deed of trust executed by Johnson-Seck; (3) the assignment of deed of trust executed by Stotts; (4) the substitution of trustee executed by Allen; (5) the modification agreement between appellant and IndyMac Mortgage Services, a division of OneWest Bank; (6) the notice of default; (7) the notice of trustee's sale; and (8) the trustee's deed.

Respondents also provided copies of a Master Purchase Agreement by and among the FDIC as conservator for IndyMac Federal Bank, IMB Holdco LLC, and OneWest Bank Group LLC, dated March 18, 2009, and a Servicing Business Asset Purchase Agreement by and between the FDIC as receiver for IndyMac Federal Bank and OneWest Bank, dated March 19, 2009.

In addition to the foregoing, respondents filed the declaration of their attorney, Victoria J. Tsoong. Tsoong identified each of the above-referenced documents, by recording information where applicable, and stated true and correct copies were attached to the index of exhibits. In addition, she explained that, pursuant to the Master Purchase Agreement and the Servicing Business Asset Purchase Agreement, "OneWest

18

acquired substantially all of the assets, including the servicing rights to the loan at issue in this action, from [IndyMac Federal Bank] by and through its receiver the FDIC. OneWest, including through its servicing division IndyMac Mortgage Services . . . is the current servicing agent on behalf of Deutsche [Bank]."

Respondents also filed the declaration of Charles Boyle, a vice-president of OneWest Bank. In his declaration, Boyle stated OneWest Bank was the mortgage servicer for appellant's loan and was the attorney-in-fact for Deutsche Bank, the beneficiary under the deed of trust. Boyle described the business records practices of OneWest Bank's mortgage servicing business and noted that "IndyMac Mortgage Services [was] the servicing division of OneWest, and [was] not a separate legal entity from OneWest." Boyle stated he had examined the relevant business records, and he outlined the chain of events as described in the documents attached to the index of exhibits, including the various assignments and substitutions, appellant's default, and the foreclosure.

*(c) opposition*

Appellant filed his own declaration in support of his opposition to the motion for summary judgment. Interestingly, he admitted that he received a July 6, 2007 letter from Home Loan Funding, Inc. notifying him that the mortgage servicing was being transferred to IndyMac Bank. He also acknowledged having received a letter dated October 30, 2012 from OneWest Bank in response to appellant's October 11, 2012 letter to the Consumer Financial Protection Bureau. Appellant himself described the letter as "[giving] a full accounting of how the loan [had] progressed including a history of the loan modification," the default and the foreclosure. He attached a copy of the letter describing the chronology of events and explaining why, contrary to appellant's assertion, IndyMac Mortgage Services had the right to foreclose on the property and would not rescind the foreclosure sale. The letter from OneWest Bank reiterated, inter alia, that Home Loan Funding, Inc. had transferred the servicing of his loan to IndyMac

19

Bank, and that when IndyMac Bank was closed, the loan servicing rights were sold to IndyMac Mortgage Services, a division of OneWest Bank.

Appellant questioned how this information made sense in light of the purported assignment of deed of trust from IndyMac Federal Bank to Deutsche Bank, signed by Johnson-Seck as attorney-in-fact. He wondered how it was possible that OneWest Bank and Deutsche Bank could both own his note and deed of trust and to whom he really should have been making his payments.

Furthermore, in the body of his opposition to the motion for summary judgment, appellant objected to the declarations of Tsoong and Boyle as being inadmissible. He asserted that their declarations could not have been based on personal knowledge.

Appellant did not raise his objections to the declarations orally at the hearing on the motion. However, he did remind the court, in a vague manner, that there were "many irregularities that he mentioned in his opposition . . . ." The court did not rule on the objections contained in the body of his opposition.

*(d) waiver*

On appeal, appellant reiterates his objections to the Tsoong and Boyle declarations. However, respondents claim the objections are waived on appeal, because appellant did not properly present his objections in the trial court. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527, 531.) They are correct.

As the Supreme Court in *Reid v. Google, Inc.*, *supra*, 50 Cal.4th 512 stated, "evidentiary objections made 'at the hearing shall [not] be deemed waived' ([Code Civ. Proc.,] § 437c, subd. (b)(5)), even if the trial court fails to rule on them expressly." (*Reid v. Google, Inc.*, *supra*, 50 Cal.4th at p. 527, fn. omitted.) It then proceeded to address "how and when evidentiary objections must be made to be deemed made 'at the hearing,' under section 437c, subdivision (b)(5) and (d)." (*Reid v. Google, Inc.*, *supra*, 50 Cal.4th at p. 527.) It concluded, "the California Rules of Court govern. [Citations.]" (*Id.* at p.

20

531.) It cited "current rule 3.1352 [which] states: 'A party desiring to make objections to evidence in the papers on a motion for summary judgment must either: [¶] (1) Submit objections in writing under rule 3.1354; or [¶] (2) Make arrangements for a court reporter to be present at the hearing.'" (*Reid v. Google, Inc.*, *supra*, 50 Cal.4th at p. 531.) It also noted that "current rule 3.1354 require[s] written objections to be served and filed before the hearing. [Citation.]" (*Reid v. Google, Inc.*, *supra*, 50 Cal.4th at p. 531.)

We observe that California Rules of Court, rule 3.1354(a) requires that "all written objections to evidence in support of or in opposition to a motion for summary judgment . . . must be served and filed at the same time as the objecting party's opposition or reply papers are served and filed." Rule 3.1354(b) specifies: "All written objections to evidence must be served and filed separately from the other papers in support of or in opposition to the motion. . . . Each written objection must be numbered consecutively and must: [¶] (1) Identify the name of the document in which the specific material objected to is located; [¶] (2) State the exhibit, title, page, and line number of the material objected to; [¶] (3) Quote or set forth the objectionable statement or material; and [¶] (4) State the grounds for each objection to that statement or material. . . ." Furthermore, rule 3.1354(c) requires the "party submitting written objections to evidence [to] submit with the objections a proposed order" and specifies the required form of the order.

In this case, appellant failed to comply with California Rules of Court, rule 3.1354. He did not file and serve objections separate from his opposition. Moreover, the objections contained within the body of his opposition did not satisfy the remaining requirements of the rule. Inasmuch as appellant's written objections were not made in accordance with rule 3.1354, we conclude they were not "made at the hearing" within the meaning of Code of Civil Procedure section 437c, subdivisions (b)(5) and (d). Given that, and the fact that the court did not rule upon them, the objections have not been preserved on appeal. (*Reid v. Google, Inc.*, *supra*, 50 Cal.4th at pp. 531-532.)

21

*(e) analysis*

We nonetheless address whether respondents met their burden to raise a complete defense to appellant's remaining two causes of action.

Respondents' evidence showed that MERS, as nominee for Home Loan Funding, Inc., assigned the note and beneficial interest in the deed of trust to IndyMac Federal Bank, in February 2009. It further showed that, in March 2009, the FDIC as receiver for IndyMac Federal Bank transferred substantially all of the assets of IndyMac Federal Bank, including loan servicing rights, to OneWest Bank. Both Tsoong and Boyle declared that appellant's deed of trust and the right to service his loan were among the specific assets transferred. So, the evidence showed that OneWest Bank, through its mortgage servicing division IndyMac Mortgage Services, was the servicer for appellant's loan, and thus had the right to collect the monies owing thereunder and to foreclose following appellant's default. Consequently, respondents raised a complete defense to appellant's causes of action for quasi-contract and an accounting.

The burden then shifted to appellant to raise a triable issue of material fact. In his opposition to the motion for summary judgment, appellant acknowledged the transfer of assets from IndyMac Federal Bank to OneWest Bank, the servicing of his loan by OneWest Bank, and the modification of his loan by OneWest Bank. However, he called attention to the assignment of deed of trust signed by Johnson-Seck, as giving rise to confusion in the chain of title.

As we recall, on September 15, 2009, Johnson-Seck, as attorney-in-fact for IndyMac Federal Bank, executed an assignment of deed of trust by which IndyMac Federal Bank purportedly assigned the beneficial interest in the deed of trust to Deutsche Bank National Trust Company, as trustee of the IndyMac Indx Mortgage Trust 2007-AR19, Mortgage Pass-through Certificates, Series 2007-AR19 under the Pooling and Servicing Agreement dated July 1, 2007. This was after the date of the Master Purchase

22

Agreement by which the FDIC agreed to transfer IndyMac Federal Bank assets to OneWest Bank.

In reviewing the evidence to determine Johnson-Seck's authority to execute the assignment of deed of trust, we find a copy of a limited power of attorney attached to Boyle's declaration. The limited power of attorney, given by the FDIC as receiver for IndyMac Federal Bank, authorized the attorney-in-fact to execute documents on behalf of the receiver. However, it is unclear that this particular limited power of attorney authorized Johnson-Seck to execute the assignment in question. And, we do not know if a different power of attorney gave her the requisite authority.

So, we can see why the assignment executed by Johnson-Seck raised confusion as to the owner of the beneficial interest in the deed of trust as of the date of foreclosure. There was a question whether the assignment was defective, and thus, whether the beneficial interest in the deed of trust had been properly transferred to Deutsche Bank as trustee of the mortgage trust or whether it remained with OneWest Bank, which had acquired the assets of IndyMac Federal Bank. But either way, OneWest Bank, through its mortgage servicing division IndyMac Mortgage Services, remained the servicer entitled to collect appellant's payments and to foreclose. This being the case, appellant failed to raise a triable issue of material fact with respect to his causes of action for quasi-contract and an accounting.

As a closing note, appellant has not shown how the question regarding the legal effect of the Johnson-Seck assignment could have prejudiced him.[4] He was required to pay the monies owing under the note and deed of trust to the loan servicer in any event. Moreover, since OneWest Bank and Deutsche Bank are both parties to the litigation, and each of them claims the money was properly paid to the loan servicer,

---

[4]     We also note that, to the extent appellant has raised additional issues for the first time in his reply brief, we do not consider them. (*Schubert v. Reynolds* (2002) 95 Cal.App.4th 100, 108.)

23

neither of them can come forward in the future and claim otherwise.  "Absent any prejudice, [appellant has] no standing to complain about any alleged lack of authority or defective assignment.  [Citations.]"  (*Siliga v. Mortgage Electronic Registration Systems, Inc.* (2013) 219 Cal.App.4th 75, 85.)

The court did not err in granting the motion for summary judgment.

III

DISPOSITION

The order and judgment are affirmed.  Respondents shall recover their costs on appeal.


MOORE, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


THOMPSON, J.

24